Jimmy Sol BOOKER, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–03–00708–CR.

Court of Appeals of Texas,
Dallas.

Feb. 24, 2004.

Dennis P. Jones, Kaufman, for appellant.

Louis W. Conradt Jr., Criminal District Attorney, Kaufman, for state.

Before Justices WHITTINGTON, JAMES, and O'NEILL.

## OPINION

Opinion by Justice JAMES.

Jimmy Sol Booker appeals the trial court's findings following DNA testing pursuant to chapter 64 of the Texas Code of Criminal Procedure. Appellant brings six points of error contending the trial court erred by: (a) failing to follow the procedures required by chapter 64 (points 1 and 2); (b) not appointing an expert in DNA analysis to assist appellant and to test the evidence separate from the testing performed by the Texas Department of Public Safety's laboratory (point 3); (c) not allowing appellant to testify at the hearing (point 5); and (d) determining the results of the DNA testing were not favorable to appellant (point 6). Appellant also contends he lacked effective assistance of counsel (point 4). We conclude we lack jurisdiction to address appellant's first five points of error, and the trial court's unfavorable finding is supported by the record. Accordingly, we affirm the trial court's findings.

## FACTUAL BACKGROUND

On June 12, 1991, appellant was sentenced to life imprisonment for aggravated sexual assault. Appellant's conviction was affirmed on appeal. *Booker v. State*, No. 05–91–01074–CR, 1993 WL 541415 (Tex. App.-Dallas Dec. 28, 1993, pet. ref'd) (not designated for publication). Part of the evidence at trial was genetic testing of a vaginal swab from the complainant. The testing laboratory obtained "Lifeprint" patterns from the swab and appellant's blood and determined the Lifeprint pattern for appellant's blood matched the pattern of the male substances detected on the swab. The laboratory evidence showed that matching patterns for persons in appellant's racial group in North America occur in one in every 60,400,000 people. *Id.* slip op. at 3–4, 1993 WL 541415, at *2.

Following his conviction, appellant filed pro se motions seeking, *inter alia*, DNA testing of the vaginal swab and appointment of an expert in DNA analysis. The trial court appointed an attorney for appellant. On November 13, 2001, appellant's attorney and the State's attorney filed an agreed motion for DNA testing pursuant to chapter 64 of the code of criminal procedure. The trial court granted the motion.

After the DNA testing, the trial court conducted a hearing pursuant to article 64.04 of the code of criminal procedure.[1] The evidence presented at the hearing showed the vaginal swab was tested by the Texas Department of Public Safety's crime laboratory in Garland. The DNA typing of sperm cells recovered from the swab was examined at fourteen loci. At six of these loci, appellant could not be excluded as the contributor of the sperm. Lorna Beasley, the DNA analyst who tested the swab, testified the remaining eight loci gave no results or inconclusive results. Beasley's report concluded, "At these loci, the probability of selecting an unrelated person at random who could be the source of this DNA profile is approximately 1 in 2,793,000 for Caucasians, 1 in 370,500 for Blacks, and 1 in 937,200 for Hispanics." After the hearing, the trial court entered written findings that the result of the DNA testing was not favorable to appellant and that it was not reasonably probable that appellant would not have been prosecuted or convicted based on the DNA testing results.

## JURISDICTION

■ The right to appeal from a proceeding under chapter 64 of the code of criminal procedure comes from article 64.05 of the code of criminal procedure. Because appellant moved for post-conviction DNA testing before September 1, 2003, the version of article 64.05 applicable in this case provides: "An appeal of a finding under article 64.03 or 64.04 is to a court of appeals, except that if the convicted person was convicted in a capital case, the appeal of the finding is a direct appeal to the court of criminal appeals." Tex.Code Crim. Proc. Ann. art. 64.05 (amended 2003).[2]

---

1. The applicable version of 64.04 provided in part: "After examining the results of testing under Article 64.03, the convicting court shall hold a hearing and make a finding as to whether the results are favorable to the convicted person." Act of Apr. 3, 2001, 77th Leg., R.S., ch. 2, § 2, 2001 Tex. Gen. Laws 2, 4, *amended by* Act of Apr. 25, 2003, 78th Leg., R.S., ch. 13, § 4, 2003 Tex. Gen. Laws 16, 16 (codified at Tex.Code Crim. Proc. Ann. art. 64.04 (Vernon Supp.2004)).

2. Act of Apr. 3, 2001, 77th Leg., R.S., ch. 2, § 2, 2001 Tex. Gen. Laws 2, 4, *amended by* Act of Apr. 25, 2003, 78th Leg., R.S., ch. 13, § 5, 2003 Tex. Gen. Laws 16, 16–17 (codified at Tex.Code Crim. Proc. Ann. art. 64.05 (Vernon Supp.2004)). *See* Act of Apr. 25, 2003, 78th Leg., R.S., ch. 13, §§ 8, 9, 2003 Tex. Gen. Laws 16, 17 (2003 amendment "applies only to a convicted person who on or after the effective date of this Act [September 1, 2003] submits a motion for forensic DNA testing";

In *Wolfe v. State*, 120 S.W.3d 368 (Tex. Crim.App.2003), the appellant, who had been sentenced to the death penalty in an earlier proceeding, had requested and received post-conviction DNA testing under chapter 64. *Id.* 120 S.W.3d at 369–70. The appellant requested the trial court appoint an independent expert to assist the appellant and his attorney in analyzing the testing data. *Id.* 120 S.W.3d at 369–70. The trial court refused to appoint an expert and entered a finding that the results of the DNA testing were not favorable. *Id.* at 369–70, 371–72. On direct appeal to the court of criminal appeals, the appellant's only asserted error was the trial court's refusal to appoint an independent expert. *Id.* 120 S.W.3d at 369–70. The court of criminal appeals determined that the right to appeal under chapter 64 was limited to the specific provisions of article 64.05. *Id.* 120 S.W.3d at 371–72. Because the refusal to appoint an expert is not a finding under article 64.03 or 64.04, the court of criminal appeals concluded the appeal was outside the scope of article 64.05 and dismissed the appeal. *Id.* at 371, 372. Thus, under *Wolfe*, it appears we lack jurisdiction over any issues that are not "an appeal of a finding under Article 64.03 or 64.04." Tex.Code Crim. Proc. Ann. art. 64.05 (amended 2003).

In a case decided after *Wolfe*, however, the court of criminal appeals appeared to find it had jurisdiction under the same version of article 64.05 to address the issue of whether a convicted person was entitled to a hearing prior to the trial court ruling on the convicted person's entitlement to post-conviction DNA testing. *Whitaker v. State*, No. 74612, 2004 WL 63981, at *2–3, —— S.W.3d ——, ———–—— (Tex.Crim. App. Jan. 14, 2004). Instead of dismissing the point of error for want of jurisdiction,

the court addressed the merits of the argument, determined the appellant was not entitled to a hearing, and overruled the point of error. *Id.* The issue in *Whitaker* did not appear to involve a finding under article 64.03 or 64.04, but the court of criminal appeals accepted jurisdiction over the issue and addressed it. The court of criminal appeals' opinion provides no explanation of why it addressed the issue in *Whitaker* when only two months previously it had held it lacked jurisdiction to address appointment of an expert because it did not involve a finding under article 64.03 or 64.04. After *Whitaker*, the extent of our jurisdiction under the prior version of article 64.05 is unclear.

In this case, none of appellant's first five points of error concern a finding under article 64.03 or 64.04. Under *Wolfe*, it would be clear that we lack jurisdiction to address these points of error. However, after *Whitaker*, it is unclear that we lack jurisdiction to address them except for the issue presented in *Wolfe*, appointment of an expert to assist the appellant and his attorney in analyzing the DNA test results. Accordingly, under *Wolfe*, we hold we lack jurisdiction to address appellant's first five points of error, and we dismiss them. However, because *Whitaker* indicates we may have jurisdiction to address issues other than appointment of an expert, regardless of whether those issues involve findings under article 64.03 or 64.04, we address the merits of those points of error in the interest of justice.

## ARTICLE 64.03(d)

█ In his first point of error, appellant contends the trial court erred by not including the requirements of article

former law continued effective for motions for DNA testing submitted before September 1, 2003).

64.03(d)(1)-(3) in the order for DNA testing. Article 64.03(d) provides:

> If the convicting court orders that the forensic DNA testing be conducted by a laboratory other than a Department of Public Safety laboratory or a laboratory under contract with the department, the State of Texas is not liable for the cost of testing. *If the court orders that the testing be conducted by a laboratory described by this subsection,* the court shall include in the order requirements that:
>
> (1) the DNA testing be conducted under reasonable conditions designed to protect the integrity of the evidence and the testing process;
>
> (2) the DNA testing employ a scientific method sufficiently reliable and relevant to be admissible under Rule 702, Texas Rules of Evidence; and
>
> (3) on completion of the DNA testing, the results of the testing and all data related to the testing required for an evaluation of the test results be immediately filed with the court and copies of the results and data be served on the convicted person and the attorney representing the state.

TEX.CODE CRIM. PROC. ANN. art. 64.03(d) (Vernon Supp.2004) (emphasis added). As the text of article 64.03(d) makes clear, these requirements apply only when the trial court orders the testing be conducted by a laboratory other than a Department of Public Safety laboratory or a laboratory under contract with the department. *Id.* In this case, the trial court did not order the testing to be conducted by a laboratory other than a Department of Public Safety laboratory, and the testing was performed by a Department of Public Safety laboratory. Accordingly, the requirements of article 64.03(d)(1)-(3) do not apply. We overrule appellant's first point of error.

In his second point of error, appellant contends the trial court erred by not ordering that appellant be served with copies of the results of the DNA testing and all data related to the testing. Article 64.03(d)(3) requires the trial court to make such an order if the testing was not performed by a Department of Public Safety laboratory or a laboratory under contract with the department. *Id.* In this case, the testing was performed by a Department of Public Safety laboratory, so article 64.03(d)(3) does not apply. Appellant cites no other authority requiring that he be served with copies of the results and all the testing data. We conclude appellant has not shown the trial court erred. We overrule appellant's second point of error.

### APPOINTMENT OF EXPERT

In his third point of error, appellant contends the trial court erred by not appointing appellant an expert in the field of DNA research to assist in appellant's defense. Appellant first asserts the trial court should have appointed an expert to conduct DNA testing independent of the testing performed by the Department of Public Safety's laboratory. Article 64.03(c) provides, "The court may order the test to be conducted by the Department of Public Safety, by a laboratory operating under a contract with the department, *or,* on agreement of the parties, by another laboratory." TEX.CODE CRIM. PROC. ANN. art. 64.03(c) (Vernon Supp.2004) (emphasis added). Chapter 64 makes no provision for testing by the Department of Public Safety *and* another laboratory. In *State v. Patrick,* 86 S.W.3d 592 (Tex.Crim. App.2002) (orig. proceeding), the court of criminal appeals held trial courts do not have jurisdiction to order post-conviction DNA testing outside the provisions of chapter 64. *Patrick,* 86 S.W.3d at 594–95. Accordingly, the trial court lacked jurisdiction to appoint an expert to perform inde-

pendent DNA testing. Even if the trial court had jurisdiction to appoint an independent expert to perform such testing, the testing would have been impossible to perform because the testing by the Department of Public Safety's laboratory consumed the swab, leaving nothing for further testing. Accordingly, appellant's argument that the trial court should have granted his motions for appointment of an expert to perform independent testing lacks merit, and we overrule this portion of appellant's third point of error.

Appellant also asserts the trial court should have appointed him an expert to assist him in analyzing the Department of Public Safety laboratory's report of the DNA testing and to testify as an expert witness at the article 64.04 hearing. In *Wolfe*, the court of criminal appeals expressly held the trial court's failure to appoint an expert to assist appellant and his attorney in preparing for the article 64.04 hearing is not reviewable on appeal. *Wolfe*, 120 S.W.3d at 372. Accordingly, we lack jurisdiction to address this argument, and we dismiss this portion of his third point of error.

■ In his fourth point of error, appellant contends his counsel was ineffective in not seeking a hearing and ruling on appellant's pro se motions for appointment of an expert. To the extent this point of error concerns appointment of an expert to perform additional testing, appellant must show that counsel erred and that a reasonable probability exists that, but for counsel's error, the outcome of the proceeding would have been different. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App. 1996). In this case, because additional testing was impossible and because the trial court lacked jurisdiction to order appointment of an expert to perform additional testing, we conclude counsel did not err in failing to seek a hearing and ruling

on appellant's pro se motions. For the same reasons, even if counsel had sought a hearing and ruling on appellant's pro se motions, no reasonable probability exists that the outcome of the proceeding would have been different. To this extent, we overrule appellant's fourth point of error.

■ Appellant's pro se motions also requested appointment of an expert to assist appellant in analyzing the DNA test results to prepare for the article 64.04 hearing. Resolution of this argument would require our determining whether the trial court would have erred in denying appointment of such an expert. Under *Wolfe*, we lack jurisdiction to address that issue. *Wolfe*, 120 S.W.3d at 371–72. Accordingly, we conclude that under *Wolfe* we also lack jurisdiction to determine whether appellant's counsel was ineffective for not seeking a hearing and ruling on appellant's pro se motions for appointment of an expert to assist appellant and his attorney in the analysis of the test results. To this extent, we dismiss appellant's fourth point of error.

## RIGHT TO TESTIFY

■ In his fifth point of error, appellant contends the trial court erred in denying him his right to testify at the hearing conducted pursuant to article 64.04. After both the State and appellant concluded questioning Beasley, the following occurred:

The Court: Anything further from the [S]tate?

[Prosecutor]: Nothing further.

[Defense Counsel]: I have no witnesses, Judge.

The Defendant: Your Honor, I would like to speak on my own behalf, please the court.

The Court: No, sir.

A convicted person has no right to be present at a post-conviction hearing such as a hearing conducted pursuant to chapter 64. *Ex parte Mines*, 26 S.W.3d 910, 914 (Tex.Crim.App.2000); *Cravin v. State*, 95 S.W.3d 506, 510 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd). If a convicted person has no right to be present at the hearing, he can have no right to testify at that hearing. *See Oken v. Warden*, 233 F.3d 86, 93 (1st Cir.2000) (no right to testify at federal post-conviction proceedings). We overrule appellant's fifth point of error.

### UNFAVORABLE FINDING

In his sixth point of error, appellant contends "the evidence was insufficient for the trial court to make a determination or finding that [the DNA test results] were not favorable to [appellant.]" Because this point of error challenges the trial court's finding under article 64.04, it falls within the scope of an appeal under article 64.05, and we have jurisdiction to address it.

The court of criminal appeals has not set out the standard of review of a trial court's finding under article 64.04. However, the court of criminal appeals has held similar language under article 64.03(a)(2)(A)[3] means "a reasonable probability exists that exculpatory DNA tests will prove a convicted individual's innocence." *Skinner v. State*, 122 S.W.3d 808, 811 (Tex.Crim.App.2003); *see Rivera v. State*, 89 S.W.3d 55, 59 (Tex.Crim.App. 2002). Applying this interpretation under article 64.04, we conclude a trial court does not err by finding a post-conviction DNA test result "not favorable" if the test result fails to demonstrate a reasonable probability that the convicted person is innocent. *See Baggett v. State*, 110 S.W.3d 704, 706 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd).

In *Rivera*, the court of criminal appeals determined that the appropriate standard of review in making the determination under article 64.03(a)(2)(A) is the standard set forth in *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App.1997). *Rivera*, 89 S.W.3d at 59. Under this standard, we afford almost total deference to a trial court's determination of issues of historical fact and its application of the law to fact issues that turn on determinations of witnesses' credibility and demeanor, and we review de novo the trial court's application of the law to fact issues that do not turn on determinations of witnesses' credibility and demeanor. *Id.; Guzman*, 955 S.W.2d at 89. In this case, the issue of whether the DNA test results demonstrate a reasonable probability of the defendant's innocence does not turn on determinations of the credibility of the witnesses, so we review de novo the trial court's finding that the DNA test results were "not favorable." *See Rivera*, 89 S.W.3d at 59 (reviewing de novo "ultimate question of whether a reasonable probability exists that exculpatory DNA tests would prove innocence").

Appellant argues the test results do not support the unfavorable finding because only six of the fourteen loci examined did not exclude appellant as a donor. However, the remaining eight loci yielded either no result or an inconclusive result. None of them excluded appellant as the donor. Thus, the fact that only six of the fourteen loci yielded a result of not excluding appel-

---

**3.** Article 64.03(a)(2)(A) provided: "A convicting court may order forensic DNA testing under this chapter only if: ... (2) the convicted person establishes by a preponderance of the evidence that: (A) a reasonable probabili-ty exists that the person would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing...." Tex.Code Crim. Proc. Ann. art. 64.03(a)(2)(A) (amended 2003).

lant does not demonstrate a reasonable probability of innocence.

Appellant also argues the test results do not support the unfavorable finding because the laboratory did not perform mitochondrial DNA testing which, appellant asserts, is newer, more sophisticated, able to test smaller amounts of DNA, and is better suited to testing the DNA in this case. The fact that newer, more sophisticated means of testing DNA may exist or that a better method of testing the DNA exists does not affect the trial court's finding. The issue is whether the test results actually obtained demonstrate a reasonable probability of innocence; the issue is not what other, non-existent, test results might have shown about appellant's innocence.

After reviewing de novo all the evidence, we conclude the post-conviction test results do not demonstrate a reasonable probability of appellant's innocence. Accordingly, we hold the trial court did not err in finding the DNA test results were "not favorable" to appellant. We overrule appellant's sixth point of error.

We affirm the trial court's findings.