In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00025-CV
______________________________


 
 
IN THE ESTATE OF
MAUD AUBRIA HILL, DECEASED
 
 


                                              

On Appeal from the 402nd Judicial District Court
Wood County, Texas
Trial Court No. 2004-071


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

          This Court has been notified that a party in an appeal pending before this Court, Kirk
Lewis, individually, has filed a petition for bankruptcy. We have previously stayed further
action in the case and suspended the appeal. See Tex. R. App. P. 8.2.
          Accordingly, for administrative purposes, this case is abated and will be treated as
closed. Any party may reinstate by promptly filing a motion with an attached certified copy
of the order showing that the automatic bankruptcy stay has been lifted or terminated and
specifying what further action, if any, is required from this Court. In the event of
reinstatement, any period that began to run and had not expired at the time of suspension
will begin anew when the proceeding is reinstated. Any document filed while the
proceeding is suspended will be deemed filed on the same day, but after, the Court
reinstates the appeal. See Tex. R. App. P. 8.2, 8.3.
 
                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      October 26, 2005
Date Decided:         October 27, 2005



/EM>, 838 S.W.2d 248 (Tex.
Crim. App. 1992), in which the Texas Court of Criminal Appeals addressed the due-process
considerations involved in providing access to expert assistance. (5) At the hearing on the motion
(conducted on the day trial was scheduled to begin), Hyder further explained that he requested an
expert for assistance in understanding the report already obtained from the DPS laboratory and for
independent testing as well. The trial court denied Hyder's motion. (6) Hyder urged his request a
second time in a motion to reconsider which advanced the same position and information as his
original motion; the trial court refused to reconsider and again denied the request. Since Hyder
sought appointment of an expert in terms of both statutory entitlement and by reference to
constitutional considerations, we will address each basis in turn.

 A. Statutory Basis for Appointment

 The appointment of experts in a noncapital case is governed in part by Article 26.05: "A
counsel in a noncapital case . . . shall be reimbursed for reasonable and necessary expenses,
including expenses for investigation and for mental health and other experts." Tex. Code Crim.
Proc. Ann. art. 26.05(d). The appointment of an expert witness under Article 26.05 rests within the
sound discretion of the trial court. De Freece v. State, 848 S.W.2d 150, 154 n.3 (Tex. Crim. App.
1993); Stoker v. State, 788 S.W.2d 1, 16 (Tex. Crim. App. 1989); Moore v. State, 836 S.W.2d 255,
260 (Tex. App.--Texarkana 1992, pet. ref'd).

 In determining whether the trial court abused its discretion by denying appointment of an
expert, the Texas Court of Criminal Appeals has considered whether the defendant presented
evidence supporting the motion for appointment, whether defense counsel ascertained the expert's
availability to testify, and whether defense counsel presented evidence as to the costs involved in
procuring the expert's services. See Stoker, 788 S.W.2d at 17. Also significant in Stoker was the
timing of the motion. Although defense counsel in Stoker indicated that he had not anticipated the
introduction of extraneous offenses for which he sought appointment of a psychology expert, the
Stoker court pointed out that counsel "was aware of the existence of these extraneous offenses since
they were pending by indictment in the same court" as the case at issue then. Id. The court went on
to consider the fact that despite this awareness, defense counsel did not file the motion for
appointment until after voir dire:

 As we stated in Hammett, "[n]ot only was the late hour in which appellant filed his
motion calculated to be disruptive of the trial, the very nature of his motion
compounded the problem. To have granted appellant's motion as it was presented
and at the time it was filed would have constituted a real threat to the court's control
of the trial. The granting of appellant's motion under the circumstances here
presented would have allowed appellant to manipulate his asserted rights in such a
manner as to obstruct the orderly administration of justice."

Id. (quoting Hammett v. State, 578 S.W.2d 699, 707 (Tex. Crim. App. 1979)). 

 Hyder's motion to appoint provides no affidavit or evidence to explain why or how an expert
would assist in his defense. He generally asserted his right to independent examination of the
evidence and stated that the cost of the named expert's assistance was reasonable and necessary to
his defense. So, like the motion in Stoker, Hyder's motion failed to demonstrate a specific need for
appointment of a DNA expert. 

 Also in keeping with the Stoker guidelines, we consider the timing of the motion to appoint. 
Here, Hyder filed his motion only three days before trial. We look to the record to determine
possible dates at which Hyder's defense counsel would have learned that the State would present
DNA evidence. We first note that the trial court appointed defense counsel on March 31, 2006. That
same day, the State tendered several documents to defense counsel. Included in this discovery
disclosure were offense reports clearly indicating that the jacket had been submitted for DNA testing. 
Detective David Cheatham of the Longview Police Department noted in his report that hairs were
discovered on the jacket located on the road near the second robbery and visually identified as the
jacket worn during the Family Dollar store robbery. Detective Cheatham noted that Detective Kirk
Haddix forwarded the jacket to the DPS laboratory. Detective Haddix's report specifically stated that
the jacket was submitted for DNA testing to the DPS laboratory in Garland on December 20, 2005.

 On July 26, 2006, the State faxed defense counsel a copy of the search warrant to retrieve a
sample of Hyder's blood for confirmation of the earlier CODIS match indicating Hyder as the
contributor of the DNA profile from the jacket. Included as an attachment was the DPS laboratory
report dated May 4, 2006, and detailing the CODIS match. In addition, on July 26, the State faxed
a notice to defense counsel which added three DNA experts and the nurse who drew Hyder's blood
pursuant to the search warrant to the witness list. The State updated defense counsel on August 2,
alerting counsel that testing on Hyder's blood sample had begun and noting that testing should be
complete the week before trial. On August 14, the State sent defense counsel the final DNA report
which confirmed the results obtained from the CODIS search. 

 Defense counsel measures the time in which he had to file the motion as measured from this
last (August 14) date. We cannot agree that the day defense counsel learned the results of the DNA
comparison is the relevant date to imply when examining the timing of the motion. While defense
counsel did not know the results of the final DNA comparison earlier than August 14, he was aware
well before the filing of the motion to appoint an expert that DNA testing has been ordered, that the
State intended to present DNA evidence, and that there had already been a match through CODIS
between the DNA profile taken from the jacket and Hyder's stored DNA profile. Because the late
hour at which the motion to appoint an expert was filed and due to the absence of any evidence
produced by Hyder in support of that motion, we conclude that the trial court did not abuse its
discretion when it refused to appoint a DNA expert pursuant to Article 26.05.

 B. Constitutional Basis for Appointment

 The United States Supreme Court explained that due process requires access to the raw
materials integral to the building of an effective defense and that under certain circumstances, those
raw materials include an appointed expert. See Ake v. Oklahoma, 470 U.S. 68, 77 (1985). The Ake
decision set forth three considerations relevant to determining whether an indigent defendant is
constitutionally entitled to the requested appointed expert: the defendant's interest, the State's
interest, and "the probable value of the . . . procedural safeguards that are sought, and the risk of the
erroneous deprivation of the affected interest if those safeguards are not provided." Id. at 77; (7)
Jackson v. State, 992 S.W.2d 469, 472-73 (Tex. Crim. App. 1999).

 It is the third consideration that is the focus of most cases addressing the appointment of an
expert in the due-process context. See Rey, 897 S.W.2d at 337-38. (8) The Ake Court explained that
the risk of erroneous deprivation is too high when it is clear that the issue on which the expert is
sought is likely to be a significant factor at trial. Ake, 470 U.S. at 83. Therefore, an indigent
defendant has the right to have an expert appointed upon a preliminary showing that the matters that
the expert will address will likely be significant factors at trial. See Rey, 897 S.W.3d at 339 (citing
Ake, 470 U.S. at 74).

 Relying on Ake, the Texas Court of Criminal Appeals has held that the appointment of an
expert is required when a defendant makes "a preliminary showing of a significant issue of fact on
which the State would present expert testimony, and which the knowledge of a lay jury would not
be expected to encompass." Jackson, 992 S.W.2d at 474. The burden is on the defendant to make
a sufficient threshold showing of this particularized need for the expert's assistance. See Griffith,
983 S.W.2d at 286-87; Rey, 897 S.W.2d at 339. In order to carry this burden, a defendant must offer
more "than undeveloped assertions that the requested assistance would be beneficial." Williams v.
State, 958 S.W.2d 186, 192 (Tex. Crim. App. 1997); Rey, 897 S.W.2d at 339 (citing Caldwell v.
Mississippi, 472 U.S. 320, 323-24, n.1 (1985)); Smith v. State, 131 S.W.3d 928, 930 (Tex.
App.--Eastland 2004, pet. ref'd). A defendant must also show more than the mere conclusions of
defense counsel. Norton v. State, 930 S.W.2d 101, 111 (Tex. App.--Amarillo 1996, pet. ref'd). The
defendant must show both that there exists a reasonable probability that an expert would be of
assistance and that denial of expert assistance would result in a fundamentally unfair trial. Davis v.
State, 905 S.W.2d 655, 659 (Tex. App.--Texarkana 1995, pet. ref'd) (citing Moore v. Kemp, 809
F.2d 702, 712 (11th Cir. 1987)). 

 As the Rey opinion pointed out, the cases holding that a defendant failed to make a sufficient
preliminary showing of the need for an expert are typically cases in which a defendant failed to
support his motion with affidavits or other evidence supporting his defensive theory, (9) explaining why
the expert's assistance would be useful in establishing that theory, or showing that there was reason
to question the State's expert and proof. Rey, 897 S.W.2d at 341. A defendant meets this threshold
burden by making his defensive theory clear to the trial court and supporting it with factual
allegations or evidence that expert testimony would support his defensive theory. See id. We
analyze whether a defendant made a sufficient threshold showing by examining the facts and
arguments before the trial court at the time of the defendant's motion. Id. at 342 n.9.

 Here, Hyder did not provide any evidence to support his defensive theory or any evidence
explaining the usefulness of expert assistance on the matter. He did not submit any affidavits or
evidence to support the motion and also made no such showing at the hearing on the motion. As the
trial progressed, we see that the issue of identity was central to Hyder's defense. And, although the
State had evidence that victims identified Hyder in a photographic line-up and their in-court
testimony identified Hyder as the individual who committed the robberies, the State did make the
DNA matches a significant portion of its case. During cross-examination of the State's DNA experts,
Hyder's defensive theory became a bit more clear. Through his mother's testimony, Hyder asserted
that his car had been broken into and several items, possibly including his jacket, had been stolen. 
It appears that Hyder wanted to utilize expert assistance to support his theory that someone else wore
his jacket during the commission of the robberies. Further, in his brief to this Court, Hyder more
specifically explains how an expert may have been beneficial to his defensive theory: the "requested
expert would have assisted [defense counsel] in cross examination of the State's expert about the
presence of other genetic profiles on the jacket." 

 However, no such showing was made by Hyder at the hearing on the motion for appointment
of a DNA expert. We, therefore, cannot say that the trial court erred by determining that Hyder
failed to make a sufficient preliminary showing of the need for a DNA expert's assistance such that
the trial court would have been required to appoint one under Ake. We reiterate that we are
constrained to examine whether Hyder made a sufficient threshold showing by looking at the facts
and evidence presented to the trial court at the time of the motion. See Rey, 897 S.W.2d at 342 n.9. 
Based on those facts, the trial court did not err in denying Hyder's motion to appoint an expert.

III. CONCLUSION

 Hyder has failed to demonstrate that the trial court abused its discretion by denying his
motion to appoint a DNA expert pursuant to Article 26.05 of the Texas Code of Criminal Procedure
and has failed to show that he was denied due process by the trial court's denial of his motion to
appoint a DNA expert. We overrule Hyder's point of error. 

 Accordingly, we affirm the trial court's judgment.



 Bailey C. Moseley

 Justice


Date Submitted: July 17, 2007

Date Decided: August 7, 2007


Do Not Publish


1. In one trial, Hyder was convicted of two offenses of aggravated robbery. Although the
appeals from the convictions were briefed as one and present the same point of error, this appeal
involves only the robbery of the Family Dollar store; the robbery of the insurance agency shortly
thereafter is addressed in companion case Hyder v. State, cause number 06-06-000183-CR. 
2. Prior to receiving the tip as to the identity of the suspect, investigators had assembled a
photographic line-up of possible suspects. Hyder was not included in this initial line-up and
witnesses did not identify a suspect from the photographs included. 
3. DPS DNA laboratory supervisor, Lorna Beasley, explained that the "major component" is
the main DNA profile and it is stronger in terms of intensity and amount of DNA present. This
major component "was consistent with the single-source profile that we . . . recovered from the blood
specimen from Tyshun Hyder." She added that there was not sufficient information contained in the
minor component to extract an identifiable profile for comparison. 
4. More specifically, Beasley testified that the probability of selecting an unrelated person at
random who could be a contributor of the major component of the DNA profile from the jacket is
one in 861.3 quadrillion in the African-American population, to which group Hyder belongs. Early
in the investigation, Hyder mentioned that he does have a twin brother, but conceded that his twin
brother could not have committed these robberies since he was in prison at the time of the offense. 
5. McBride also addressed the denial of a motion to appoint a chemist in terms of the right to
inspect evidence and application of Article 39.14 of the Texas Code of Criminal Procedure. 838
S.W.2d at 250; see Tex. Code Crim. Proc. Ann. art. 39.14 (Vernon Supp. 2006).
6. The State contends this case is controlled by the reasoning in Wolfe v. State, 120 S.W.3d 368
(Tex. Crim. App. 2003). In Wolfe, the Texas Court of Criminal Appeals dismissed the appeal for
want of jurisdiction because Article 64.05 of the Texas Code of Criminal Procedure governing
appeals in post-conviction proceedings to test DNA did not specifically provide an appeal for the
trial court's denial of the appointment of an independent DNA expert. 120 S.W.3d at 372; see Tex.
Code Crim. Proc. Ann. art. 64.05 (Vernon 2006). The instant appeal, however, is not one related
to Chapter 64. Trial courts do not have jurisdiction to order post-conviction DNA testing outside
the provisions of Chapter 64. See State v. Patrick, 86 S.W.3d 592, 594-95 (Tex. Crim. App. 2002);
Booker v. State, 155 S.W.3d 259, 264 (Tex. App.--Dallas 2004, no pet.). Prior to trial, the
appointment of an independent expert for DNA testing is governed by Article 26.05. A denial of a
pretrial motion for a DNA expert, therefore, is an interlocutory order incident to the trial and may
be reviewed in connection with an appeal from the final judgment of conviction. It is this distinction
which distinguishes Wolfe from the instant case. We conclude that we have jurisdiction over this
appeal and can review the trial court's denial of the pretrial motion for appointment of an expert.
7. "While the Ake case dealt with the appointment of a psychiatrist, it is now without question
that Ake requires the appointment of an expert regardless of his field of expertise." Griffith v. State,
983 S.W.2d 282, 286 (Tex. Crim. App. 1998) (citing Rey v. State, 897 S.W.2d 333, 338 (Tex. Crim.
App. 1995)). As the Texas Court of Criminal Appeals stated:


 There is no principled way to distinguish between psychiatric and nonpsychiatric
experts. The question in each case must be not what field of expert knowledge is
involved, but rather how important the scientific issue is in the case, and how much
help a defense expert could have given.


Rey, 897 S.W.2d at 338. 
8. Rey has been questioned in terms of its position on structural error. See Briseno v. Cockrell,
274 F.3d 204, 211 (5th Cir. 2001).
9. It is because a defendant must reveal some details of his defense in order to be entitled to
appointment of an expert under Ake that the Texas Court of Criminal Appeals has concluded that
a defendant is entitled to an ex parte hearing on a motion to appoint an expert. See Williams, 958
S.W.2d at 191.