AFFIRM; Opinion issued December 21, 2012.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-11-01141-CR

## JIMMY SOL BOOKER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 86th Judicial District Court
Kaufman County, Texas
Trial Court Cause No. 16390

# OPINION

Before Justices Moseley, Fillmore, and Myers
Opinion By Justice Fillmore

Pro se appellant Jimmy Sol Booker appeals the trial court's denial of his second motions for post-conviction forensic DNA testing under chapter 64 of the code of criminal procedure and for appointment of counsel. Booker brings five points of error generally contending (1) the trial court erred by denying his second motion for post-conviction forensic DNA testing of "untested biological evidence"; (2) the State violated his due process rights by failing to respond to his second motion for post-conviction forensic DNA testing and refusing to provide for DNA testing of requested untested items; (3) the trial court's findings regarding Booker's second motion for post-conviction forensic DNA testing were not "meaningful" and, therefore, "violated principles of appellate review"; (4) the State failed to carry its burden beyond a reasonable doubt by not performing forensic

DNA testing of evidence, which may have been exculpatory, inculpatory, or inconclusive; and (5) the trial court erred by denying his second request for appointment of counsel.[1] We affirm the trial court's order denying Booker's second motions for post-conviction forensic DNA testing and for appointment of counsel.

## Background

### Booker's First Appeal

On June 12, 1991, Booker was sentenced to life imprisonment for aggravated sexual assault. We affirmed Booker's conviction on appeal. *Booker v. State*, No. 05-91-01074-CR, 1993 WL 541415, at *11 (Tex. App.—Dallas Dec. 28, 1993, pet. ref'd) (not designated for publication) (*Booker I*).

At trial, evidence was admitted[2] that Booker's hair samples were sent to a trace-element analyst, who testified that, under microscopic examination, Booker's pubic hairs matched some of the pubic hairs found in the seat cover of the victim's car. A vaginal swab obtained from the victim and Booker's blood samples were sent to GeneScreen, a genetic testing laboratory. The laboratory

---

[1] As part of the introduction to his brief, Booker lists the following "questions presented for review":

Whether the record evidence in this case, raises serious doubts or concerns that appellant was possibly incarcerated for at least twelve (12) years, before the vaginal swab was "actually" tested in May of 2002/by the Texas Department of Public Safety/(Garland)?
Whether the post conviction "inconclusive" results found in the district courts [sic] April 3rd 2003 order. [sic] relieves the state of its burden to prove "guilt beyond [sic] a reasonable doubt" when the states [sic] key witness has admitted the test results used at appellant's trial presented to the jury as a match, were in reality, "inconclusive"?
Whether the evidence appellant presented in his motion, affidavit, and appendixed exhibits, raised sufficient evidence to discredit the state's key witness, Dr. Robert C. Giles and testing conducted by Genescreen's Laboratory?
Whether the evidence taken as a whole, compounded by suggestive police procedures "irreparably suggestive identification, and dragging appellant into a lineup (absent his counsel) led to appellant's wrongful conviction?
Whether any circumstance, or evidence in this case, can be called into question by the District Court, or Fifth District Court of Appeals, so as to appoint a "special commission" to review the circumstances and facts and make a finding or determination as to whether appellant should be entitled "to a new trial as a matter of law" or a tuffiash-type hearing? SEE Tuffiash V. State 878 SW 2d (1) 197 whether any failure to hold an evidentiary hearing as was done for a similarly-situated defendant (tuffiash) [denies appellant equal protections of the law and would result in a miscarriage of justice]?

However, these "questions" are not the "grounds of error" Booker raises and argues in his brief. Accordingly, we address the five "grounds of error" argued by Booker in his brief.

[2] Our recitation regarding the evidence at trial is taken from our opinion affirming Booker's conviction. *See Booker I*, 1993 WL 541415.

---

analyzed the blood and swab and obtained a "Lifeprint" pattern for each. *Id.* at \*2. The laboratory determined that the Lifeprint pattern for Booker's blood matched the pattern in the male substances in the vaginal swab. Matching Lifeprint patterns for persons in Booker's racial group living in North America could occur in one person in 60,400,000 people. *Id.*

*Booker's Second Appeal*

In 2001, Booker filed a motion for post-conviction forensic DNA testing of the vaginal swab, contending that the "evidence was previously tested, but now there are better ways to test that could reasonably provide results that are more accurate than the results of the prior test" and that it was "highly probable that [he] would not have been prosecuted or convicted if results had been obtained with reliable DNA testing." The trial court appointed an attorney for Booker. On November 13, 2001, Booker's attorney and the State's attorney filed an agreed motion for DNA testing pursuant to chapter 64 of the code of criminal procedure. The trial court granted the motion.

The vaginal swab was tested by the Texas Department of Public Safety's Crime Laboratory (DPS Crime Laboratory) in Garland, Texas. After the DNA testing, the trial court conducted a hearing pursuant to article 64.04 of the code of criminal procedure.[3] Evidence presented at the hearing showed the DNA typing of sperm cells recovered from the swab was examined at fourteen loci. At six of the loci, Booker could not be excluded as the contributor of the sperm. Lorna Beasley, the DNA analyst who tested the swab, testified the remaining eight loci gave no results or inconclusive results. There was nothing about the test results that would exclude Booker from being the contributor of the sperm on the vaginal swab. Beasley's report concluded, "At these loci, the

---

[3]     The version of article 64.04 applicable to Booker's 2001 motion for post-conviction forensic DNA testing provided: "After examining the results of testing under Article 64.03, the convicting court shall hold a hearing and make a finding as to whether, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted." Act of Apr. 25, 2003, 78th Leg., R.S., ch. 13, § 4, 2003 Tex. Gen. Laws 16, 16 (amended 2011) (current version at TEX. CODE CRIM. PROC. ANN. art. 64.04 (West. Supp. 2011)).

probability of selecting an unrelated person at random who could be the source of this DNA profile is approximately 1 in 2,793,000 for Caucasians, 1 in 370,500 for Blacks, and 1 in 937,200 for Hispanics."[4]

After the hearing, the trial court entered written findings which included the following:

> 3. On March 12, 2003, the Court heard the results of court-ordered DNA testing. The DNA analysis was performed by the Texas Department of Public Safety in the Garland Crime Lab. The Department analyzed a vaginal swab taken from the victim in the case in October of 1990. They also analyzed a blood specimen taken from the Defendant on March 15, 2002.
> 4. Of the 14 loci analyzed, the sperm fraction of the vaginal swab was consistent with the DNA profile of the Defendant on 6 loci. On the other eight loci, the testing was inconclusive.
> 3. [sic] The Court finds the results of the DNA testing are not favorable to the applicant.
> 4. [sic] The Court further finds, based on the unfavorable AND/OR inconclusive results of the DNA testing, that it is not reasonably probable that the applicant would not have been prosecuted or convicted in Cause No. 16,390.

Booker appealed the trial court's findings. In that appeal, Booker contended, among other things, that the trial court erred in determining that the results of the DNA testing were not favorable to him. Booker argued the test results did not support the unfavorable finding because only six of the fourteen loci examined did not exclude Booker as a donor.

However, the remaining eight loci yielded either no result or an inconclusive result. None of them excluded Booker as the donor. Thus, the fact that only six of the fourteen loci yielded a result of not excluding Booker did not demonstrate a reasonable probability of innocence. *Booker v. State*, 155 S.W.3d 259, 266–67 (Tex. App.—Dallas 2004, pet. ref'd) (*Booker II*).

---

[4]     Beasley testified concerning the difference in the DNA testing result of GeneScreen—matching Lifeprint patterns for Booker's racial group living in North America could occur in one person in 60,400,000—and the DNA testing result of the DPS Crime Laboratory—the probability of selecting an unrelated person at random who could be the source of the DNA profile for Booker's racial group is approximately one in 370,500. GeneScreen conducted a restriction fragment length polymorphism analysis (RFLP). The DPS Crime Laboratory utilized the polymerase chain reaction (PCR) testing method. Beasley testified the RFLP loci are more discriminating than some of the PCR loci. However, many different areas can be tested in the PCR, and the more areas from which results can be obtained in conducting DNA testing, the more discriminating the statistics are that are generated from the testing.

In that appeal, Booker also argued the test results did not support the trial court's unfavorable finding because the laboratory did not perform mitochondrial DNA testing which, Booker asserted, was newer, more sophisticated, able to test smaller amounts of DNA, and better suited to testing the DNA in this case. We stated that the fact that newer, more sophisticated means of testing DNA may exist or that a better method of testing the DNA existed did not affect the trial court's finding. *Id.* at 267. "The issue is whether the test results actually obtained demonstrate a reasonable probability of innocence; the issue is not what other, non-existent, test results might have shown about [Booker's] innocence." *Id.* After reviewing de novo all the evidence, we concluded the post-conviction test results did not demonstrate a reasonable probability of Booker's innocence. *Id.* Accordingly, we held the trial court did not err in finding the DNA test results were "not favorable" to Booker, and we affirmed the trial court's findings. *Id.*

*Booker's Third Appeal*

On March 24, 2011, Booker filed his second motions for post-conviction forensic DNA testing of biological evidence and for appointment of counsel. The trial court's August 9, 2011 order denying Booker's motions included the following:

> [Booker] has previously filed with the Court a motion for DNA testing and a request that an attorney be appointed. The Court appointed Rick Harrison as [Booker's] attorney and ordered that an independent laboratory test the DNA. The results were highly unfavorable to [Booker]. [Booker] appealed to the Texas Court of Appeals and the trial court was affirmed.
> [Booker] now files the same motions, namely for DNA testing and for appointment of attorney. The Court finds that there is no reasonable likelihood the result would be more accurate or probative than the results of the previous test. Accordingly, [Booker's] motions are DENIED.

Booker filed this appeal of the trial court's August 9, 2011 order.[5]

---

[5] The State has not filed a brief or otherwise participated in this appeal.

Booker's first and fourth points of error are related and essentially argue the same matters. Therefore, we consider them together.

In Booker's first point of error, he asserts the trial court erred in denying his second motion for post-conviction forensic DNA testing of "untested biological evidence." According to Booker, the record "clearly established" biological evidence remained in the possession of the State and had not been tested.

In his fourth point of error, Booker asserts the State "failed to uphold its burden beyond a reasonable doubt by not testing pieces of evidence, which may have been exculpatory, inculpatory, or inconclusive." Booker states evidence he sought to have tested "existed" and that there was a greater than a fifty percent chance he would not have been convicted if exculpatory results were obtained. Booker points to the post-conviction DNA testing conducted by the DPS Crime Laboratory and the testimony at the hearing regarding that testing, wherein DNA analyst Beasley testified she was able to obtain extracts from the female portion of the victim's vaginal, but the State had not provided a sample from the victim to compare to the female's extracts.

*Standard of Review*

The ruling on a motion for DNA testing is reviewed under a bifurcated standard of review. *See Whitaker v. State*, 160 S.W.3d 5, 8 (Tex. Crim. App. 2004). In *Rivera v. State*, 89 S.W.3d 55 (Tex. Crim. App. 2002), the court of criminal appeals determined that the appropriate standard of review in making the determination under article 64.03(a)(2)(A) is the standard set forth in *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App.1997). *Rivera*, 89 S.W.3d at 59. Under this standard, we afford almost total deference to a trial court's determination of issues of historical fact and its application of the law to fact issues that turn on determinations of witnesses' credibility and

demeanor, and we review de novo the trial court's application of the law to fact issues that do not turn on determinations of witnesses' credibility and demeanor. *Id.* (reviewing de novo "ultimate question of whether a reasonable probability exists that exculpatory DNA tests would prove innocence"); *Guzman,* 955 S.W.2d at 89.

*Analysis*

Booker's second motion for post-conviction forensic DNA testing sought testing of biological evidence which, according to Booker, "the record clearly established 'remained in the possession of the State.'" The version of article 64.01 in effect at the time of the filing of Booker's second motion for post-conviction forensic DNA testing provided that a convicted person may submit to the convicting court a motion for forensic DNA testing of evidence that was secured in relation to the offense that is the basis of the challenged conviction and was in the possession of the state during the trial of the offense, but:

> (1) was not previously subjected to DNA testing;
> (A) because DNA testing was:
> (i) not available; or
> (ii) available, but not technologically capable of providing probative results; or
> (B) through no fault of the convicted person, for reasons that are of a nature such that the interests of justice require DNA testing; or
> (2) although previously subjected to DNA testing, can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test.

Act of May 24, 2007, 80th Leg., R.S., ch. 1006, §2, 2007 Tex. Gen. Laws 3523–24 (amended 2011) (current version at TEX. CODE CRIM. PROC. ANN. art. 64.01(b) (West Supp. 2011)).

Under article 64.03 of the code of criminal procedure, a convicting court may order forensic DNA testing only if the court finds (1) the evidence still exists, is in a condition making DNA testing possible, and has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect; and (2) identity was or is an

issue in the case. TEX. CODE CRIM. PROC. ANN. art. 64.03(a) (West 2011).[6] "The convicting trial court 'shall order that the requested forensic DNA testing be conducted' only if it finds that untainted, testable biological evidence exists, that the identity of the perpetrator was an issue (Art. 64.03(a)(1)), and that the convicted person meets the requirements of Art. 64.03(a)(2)." *Leal v. State*, 303 S.W.3d 292, 296–97 (Tex. Crim. App. 2009) (quoting TEX. CODE CRIM. PROC. ANN. art. 64.03(c)); *see also Prible v. State*, 245 S.W.3d 466, 467–68 (Tex. Crim. App. 2008) (defendant not entitled to DNA testing under article 64.03 unless he shows "that unaltered evidence is available for testing; that identity was an issue in the case; that there is greater than a 50% chance that he would not have been convicted if DNA testing provided exculpatory results; and that the request is not to delay the execution of the sentence.").

In his second motion for post-conviction forensic DNA testing, Booker urged the trial court to "focus on the vaginal swab" of the victim. However, as reflected in the March 12, 2003 testimony and the May 20, 2002 report of the DNA analyst who performed the DNA testing of the vaginal swab and Booker's blood sample drawn in 2002 pursuant to Booker's first motion for forensic DNA

---

[6] Article 64.03 of the code of criminal procedure provides:

(a) A convicting court may order forensic DNA testing under this chapter only if:
(1) the court finds that:
(A) the evidence:
(i) still exists and is in a condition making DNA testing possible; and
(ii) has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect; and
(B) identity was or is an issue in the case; and
(2) the convicted person establishes by a preponderance of the evidence that:
(A) the person would not have been convicted if exculpatory results had been obtained through DNA testing; and
(B) the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice.
*  *  *
(c) If the convicting court finds in the affirmative the issues listed in Subsection (a)(1) and the convicted person meets the requirements of Subsection (a)(2), the court shall order that the requested forensic DNA testing be conducted. The court may order the test to be conducted by:
(1) the Department of Public Safety;
(2) a laboratory operating under a contract with the department; or
(3) on the request of the convicted person, another laboratory if that laboratory is accredited under Section 411.0205, Government Code.

TEX. CODE CRIM. PROC. ANN. art. 64.03 (West Supp. 2011).

testing, the vaginal swab specimen was consumed in the DNA analysis and there is no more of the specimen left. Beasley testified she was not aware of any additional samples available in this case.[7] Therefore, the evidence at the March 12, 2003 hearing established that the evidence of the vaginal swab no longer exists, making further DNA testing of sperm from the victim's vaginal swab impossible. We also note here that in *Booker II*, in response to Booker's point of error regarding the trial court's purported error in not appointing an expert in the field of DNA research to conduct DNA testing independent of the DNA testing performed by the DPS Crime Laboratory, this Court noted such additional testing "would have been impossible to perform because the testing by the [DPS Crime Laboratory] consumed the [vaginal] swab, leaving nothing for further testing." *Booker II*, 155 S.W.3d at 265.

Under article 64.03 of the code of criminal procedure, a convicting court may order forensic DNA testing only if the court finds the evidence still exists and is in a condition making DNA testing possible. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(A)(i); *Watson v. State*, 96 S.W.3d 497, 499 (Tex. App.—Amarillo 2002, pet. ref'd) (evidence at hearing on appellant's motion for post-conviction forensic DNA testing did not show that the evidence still existed and was in a condition making DNA testing possible). Accordingly, based upon our review of the trial court's application of the law to the fact issues of the case, we conclude the trial court did not err in denying Booker's second motion for post-conviction forensic DNA testing when the record establishes the evidence no longer exists.

In his appellate brief, Booker also refers to the State's purported failure "to obtain a sample for comparisons from the 'other victim' of [the State's] case." The record in this matter reflects no

---

[7] Beasley's report reflects that Booker's remaining blood specimens will continue to be stored frozen to preserve the biological constituents.

"other" victim of an offense for which Booker was prosecuted. *See Booker I*, 1993 WL 541415, at *1–2. However, apparently Booker refers to the testimony elicited from Beasley regarding the extracts obtained from the victim's vaginal swab during the DNA testing at the DPS Crime Laboratory.

At the March 12, 2003 hearing, Beasley testified that when testing samples from vaginal swabs that have the possibility of containing seminal fluid and vaginal epithelial cells, differential extraction will first recover DNA from the epithelial cell portion which is associated with the victim. The second step in the extraction is to recover DNA from the sperm cell fraction. Once the differential extraction is done, the DNA samples are treated separately and "run" separately. Each DNA profile is examined separately and interpreted. Beasley's report regarding the DNA testing reflects this differential extraction was performed here: "The vaginal swab was extracted by a two-step method that first recovers DNA from non-sperm cells usually associated with the victim (the epithelial cell fraction), and then recovers DNA from any sperm cells (the sperm fraction)."

Beasley's report reflects that the partial DNA profile from the sperm fraction of the vaginal swab is consistent with the DNA profile of Booker. Beasley testified that in the DNA testing she performed here, the victim's vaginal swab epithelial cell fraction indicated "no reaction." Beasley did not "run" the remainder of the vaginal epithelial cell fraction, because she did not have a sample from the victim to which she could compare the epithelial cells, and there was no reason to perform that test.

Under article 64.03 of the code of criminal procedure, a convicting court may order forensic DNA testing only if the court finds identity was or is an issue in the case. TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(B). "The identity requirement in Chapter 64 relates to the issue of identity as it pertains to the DNA evidence. Therefore, if DNA testing would not determine the identity of the

person who committed the offense or would not exculpate the accused, then the requirement of Art. 64.03(a)(2)(A) has not been met." *Prible*, 245 S.W.3d at 470. Here, the female victim's epithelial cell fraction as separated in the DNA testing from the sperm fraction of the vaginal swab would not exclude or exculpate Booker. Evidence of the victim's DNA in addition to Booker's is not exculpatory evidence. *See id.* ("Thus, even if the evidence was retested and determined to contain another person's DNA in addition to Appellant's DNA, it would not establish by preponderance of the evidence that Appellant would not have been convicted if the jury had heard that DNA from a third-party was present."); *Bell v. State*, 90 S.W.3d 301, 306 (Tex. Crim. App. 2002) (presence of another person's DNA at the crime scene will not, without more, constitute affirmative evidence of appellant's innocence, and, where appellant set forth only bare assertion that biological samples in question might belong to someone else, this was not sufficient); *see also Prible*, 245 S.W.3d at 469 ("There is no constitutional right to post-conviction DNA testing in order to determine the presence of a third-party's DNA.").

"Article 64.03(a)(2)(A) requires the convicted individual to establish by a preponderance of the evidence that a reasonable probability exists that he or she would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing." *Skinner v. State*, 122 S.W.3d 808, 811 (Tex. Crim. App. 2003); *see also* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A). The Court of Criminal Appeals has interpreted that language as meaning "a reasonable probability exists that exculpatory DNA tests will prove a convicted individual's innocence." *Skinner*, 122 S.W.3d at 811 (citing *Kutzner v. State*, 75 S.W.3d 427, 438 (Tex. Crim. App. 2002)). "A trial court is never required to grant a convicted person's request for testing absent . . . a showing" that a reasonable probability exists that he would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing. *Dinkins v. State*, 84 S.W.3d 639, 643 (Tex. Crim.

–11–

App. 2002). After reviewing the record, we conclude the record supports the conclusion that Booker failed to satisfy his burden of showing under article 64.03(a)(2)(A) that exculpatory results could be produced to prove his innocence. Because Booker has failed to satisfy the requirements of chapter 64, we conclude the convicting court did not erroneously deny his second motion for post-conviction forensic DNA testing.

We resolve Booker's first and fourth points of error against him.

## Points of Error Nos. 2 and 3

Booker's second and third points of error are related and essentially argue the same matters. Accordingly, we consider them together.

In his second point of error, Booker contends the State's "refusal to respond or refusal to release" the "untested items" has "deprived him of his liberty interest in utilizing state procedures to obtain a reversal of his conviction and/or obtain a pardon, reduction of sentence through executive clemency which denies him of [sic] procedural due process." According to Booker, because the State did not respond to his second motion for post-conviction forensic DNA testing, the trial court "never had an opportunity to know if the items to be tested existed." The relief Booker seeks in his second point of error is a requirement that the State respond to his second motion for post-conviction forensic DNA testing and reversal of the trial court's denial of his second motion for post-conviction forensic DNA testing.

In his third point of error, Booker contends the trial court "violated the principles of appellate review" by failing to provide meaningful chapter 64 findings. Booker argues article 64.02 of the code of criminal procedure was violated because the State did not deliver purportedly existing evidence to the trial court or a written explanation of why the purportedly existent evidence could not be delivered to the trial court.

–12–

We are unpersuaded by Booker's second and third points of error. As discussed above with regard to his first and fourth points of error, it was determined at the hearing on Booker's first motion for DNA testing and reflected in the report of that testing, that the vaginal swab was consumed in the testing performed by the DPS Crime Laboratory. *See Booker II*, 155 S.W.3d at 265 (in response to Booker's point of error regarding the trial court's purported error in not appointing an expert in the field of DNA research to conduct DNA testing independent of the DNA testing performed by the DPS Crime Laboratory, such additional testing "would have been impossible to perform because the testing by the [DPS Crime Laboratory] consumed the [vaginal] swab, leaving nothing for further testing.").

Further, the trial court did not err in proceeding under article 64.03 without a response from the State to Booker's second motion for post-conviction forensic DNA testing. "There is no free-standing due-process right to DNA testing, and the task of fashioning rules to 'harness DNA's power to prove innocence without unnecessarily overthrowing the established system of criminal justice' belongs 'primarily to the legislature.'" *Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex. Crim. App. 2011) (quoting *Dist. Attorney's Office v. Osborne*, 557 U.S. 52, 62 (2009)). Article 64.02 provides that, upon receipt of a motion for forensic DNA testing, the convicting court shall require the attorney representing the State to take one of the following actions not later than the sixtieth day after the motion is served on the State: deliver the evidence to the court, along with a description of the condition of the evidence, or explain in writing to the court why the State cannot deliver the evidence to the court. TEX. CODE CRIM. PROC. ANN. art. 64.02(a)(2) (West Supp. 2011). Article 64.03 does not require any evidentiary hearing before the trial judge decides whether a convicted person is entitled to DNA testing. *Ex parte Gutierrez*, 337 S.W.3d at 893; *see also Rivera*, 89 S.W.3d at 58–59. Article 64.02(b) specifically provides "the convicting court may proceed under article 64.03

after the [sixty-day] response period described by Subsection (a)(2) has expired, regardless of whether the attorney representing the state submitted a response under that subsection." TEX. CODE CRIM. PROC. ANN. art. 64.02(b); *see also Sepeda v. State*, 301 S.W.3d 372, 375 (Tex. App.—Amarillo 2009, pet. ref'd) (article 64.02(b) "allows the trial court to proceed after the response period expires and regardless of whether the State filed a response").[8]

We resolve Booker's second and third points of error against him.

Point of Error No. 5

In his fifth point of error, Booker asserts the trial court abused its discretion when it denied his second motion for appointment of counsel. According to Booker, if the trial court had appointed him counsel in conjunction with his second motion for post-conviction forensic DNA testing, counsel could have presented evidence to the court challenging the credibility of the State's witness at Booker's trial, sought independent review of DNA tests at trial, located jurors that were misled by the DNA "match" testimony at Booker's trial, and shown a need for a defense expert.

The arguments Booker advances for his contention that the trial court erred in denying his motion for appointment of counsel focus on what counsel could purportedly have done to address matters involving Booker's trial for the charged offense. Booker's trial and conviction was the subject of his first appeal, and the trial court's judgment was affirmed. *See Booker I*, 1993 WL 541415, at *11.[9]

Further, appointment of counsel in a post-conviction DNA proceeding is not a purely

---

[8] *See also Martinez v. State*, No. 05-11-00329-CR, 2012 WL 807126, at *3 (Tex. App.—Dallas Mar. 13, 2012, pet. filed) (not designated for publication) ("We also note that under article 64.02(b), the trial court was entitled to proceed under article 64.03 after the response period expired, regardless of whether the State filed a response."); *In re Williams*, No. 07-11-00429-CV, 2011 WL 5244959, at *1 (Tex. App.—Amarillo Nov. 3, 2011, orig. proceeding) (per curiam) ("The convicting court may proceed under article 64.03 after the lapse of the sixty-day period, whether or not the State responds to the motion.").

[9] We note the record reflects that up to the time of Booker's second motions for post-conviction forensic DNA testing and appointment of counsel, at least four attorneys have been appointed to represent Booker, including counsel at trial.

ministerial act. *See In re Ludwig*, 162 S.W.3d 454, 455 (Tex. App.—Waco 2005, orig. proceeding). An indigent convicted person intending to file a motion for post-conviction DNA testing has a limited right to appointed counsel. Under article 64.01(c) of the code of criminal procedure, entitlement to appointment of counsel is conditioned on the trial judge's finding that reasonable grounds exist for the filing of a motion for post-conviction DNA testing. *See* Act of May 24, 2007, 80th Leg., R.S., ch. 1006, §2, 2007 Tex. Gen. Laws 3523–24 (amended 2011) (convicting court shall appoint counsel for the convicted person if he informs the court he wishes to submit a motion under chapter 64, the court finds reasonable grounds for a motion to be filed, and the court determines the person is indigent); *Gutierrez v. State*, 307 S.W.3d 318, 321 (Tex. Crim. App. 2010) (entitlement to appointment of counsel in post-conviction DNA proceeding is determined by three criteria: (1) defendant must inform the convicting court that he wishes to submit a motion for DNA testing; (2) the convicting court must find that "reasonable grounds" exist for filing a motion for DNA testing; and (3) the convicting court must find that the movant is indigent); *In re Ludwig*, 162 S.W.3d at 455 (even if the convicting court determines that a convicted person is indigent, the court would not be required to appoint counsel if it found there were no reasonable grounds for the motion for forensic DNA testing to be filed); *see also Hughes v. State*, 135 S.W.3d 926, 928 (Tex. App.—Dallas 2004, pet. ref'd) (because there is no constitutional right to counsel in a proceeding under statutes providing for forensic DNA testing, there is no constitutional right to effective assistance of counsel); *Blake v. State*, 208 S.W.3d 693, 695–96 (Tex. App.—Texarkana 2006, no pet.) (trial courts must now find reasonable grounds for the motion for DNA testing to be filed; concluding that because the trial court had evidence no biological material still existed to submit for DNA testing, trial court properly denied appointment of counsel because there were no reasonable grounds for a chapter 64 motion for DNA testing to be filed).

In our discussion of Booker's contentions regarding his second motion for post-conviction forensic DNA testing, we concluded Booker failed to provide reasonable grounds for his motion. Having determined that Booker failed to meet the statutory requirements of articles 64.01 and 64.03, the trial court's decision denying Booker's second motion for post-conviction forensic DNA testing was not error. Hence, we cannot say that the trial court erred in denying Booker's second motion for appointment of counsel. *See* TEX. CODE CRIM. PROC. ANN. arts. 64.01 & 64.03; *In re Ludwig*, 162 S.W.3d at 455. We resolve Booker's fifth point of error against him.

## Conclusion

Having resolved Booker's points of error against him, we affirm the trial court's August 9, 2011 order denying Booker's second motions for post-conviction forensic DNA testing and for appointment of counsel.

ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

111141F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JIMMY SOL BOOKER, Appellant

No. 05-11-01141-CR          V.

THE STATE OF TEXAS, Appellee

Appeal from the 86th Judicial District Court of Kaufman County, Texas. (Tr.Ct.No. 16390).

Opinion delivered by Justice Fillmore, Justices Moseley and Myers participating.

        Based on the Court's opinion of this date, we **AFFIRM** the trial court's August 9, 2011 order denying appellant's second motions for post-conviction forensic DNA testing and for appointment of counsel.

Judgment entered December 21, 2012.

ROBERT M. FILLMORE
JUSTICE