COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-255-CR

 

 

BARRY DEAN KELLY                                                            APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








Appellant Barry Dean Kelly
appeals the trial court=s denial of
his request for post-conviction forensic DNA testing.  A jury convicted Appellant of murder in 1988
and assessed a sentence of confinement for life.  The trial court sentenced Appellant
accordingly, and his conviction was affirmed on appeal.  See Kelly v. State, 792 S.W.2d 579,
588 (Tex. App.CFort Worth
1990) aff=d, 824 S.W.2d 568, 574 (Tex. Crim. App. 1992).  In a single point, Appellant complains that
the trial court erred in denying his request for post-conviction DNA
testing.  We affirm.

BACKGROUND

Following his conviction of
murder in 1988, Appellant appealed to this court, challenging the admissibility
and reliability of the DNA test results that linked him to the semen on the
victim=s bedspread, asserting that the evidence was insufficient to support
his conviction, and challenging the trial court=s denial of a request for mistrial based on juror misconduct.  See Kelly, 792 S.W.2d at 580.  This court determined that the DNA evidence
was reliable and admissible and held that the evidence was sufficient to show
that Appellant was the murderer.  Id.
at 585.  This court further noted that,
even without the DNA evidence linking Appellant to the semen found on the
victim=s bedspread, the remaining evidence was sufficient to support his
conviction.  Id. at 586.  This court also overruled Appellant=s point regarding juror misconduct. 
Id. at 588.  The court of
criminal appeals then considered Appellant=s objection to the admissibility and reliability of the DNA evidence
linking Appellant to the semen found on the victim=s bedspread and affirmed his conviction.  Kelly, 824 S.W.2d at 574.








On December 30, 2003,
Appellant filed a motion for appointment of counsel to assist him in requesting
post-conviction DNA testing, and the trial court complied.  Appellant requested that DNA testing be
performed on the following items in evidence: 
(1) a rope tourniquet found in the victim=s truck that was allegedly used by Appellant to inject drugs into his
arm; (2) a ligature determined to be the murder weapon; (3) the victim=s clothing, including her panties, shirt, and blue jeans; (4) the
victim=s fingernail clippings; (5) two cigarette butts found in the victim=s truck; (6) blood smears and splatters found in the victim=s truck; and (7) two hairs located in a blood spot found in the victim=s truck.  The trial court denied
his request. 

DISCUSSION

Appellant contends that the
trial court erred in denying his request for post-conviction DNA testing.  Specifically, he complains that the trial
court entered incorrect conclusions of law based on mistaken beliefs and
arguments of the State. 








In reviewing a trial court=s decision on a motion for DNA testing, we employ a bifurcated
standard of review.  Rivera v. State,
89 S.W.3d 55, 59 (Tex. Crim. App. 2002) (citing Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997)). 
We defer to the trial court=s determination of issues of historical fact and issues that turn on
credibility and demeanor, while we review de novo whether the trial court was
required to grant a motion for DNA testing under Chapter 64 of the Texas Code
of Criminal Procedure.  Whitaker v.
State, 160 S.W.3d 5, 8 (Tex. Crim. App.), cert. denied, 543 U.S. 864
(2004); Rivera, 89 S.W.3d at 59. 
Chapter 64 governs the requirements for a request for post-conviction
forensic DNA testing.  See Tex. Code Crim. Proc. Ann. art.
64.01-.05 (Vernon Supp. 2005). 

The Texas Code of Criminal
Procedure provides that a trial court may order post-conviction DNA testing
under the following circumstances: 

(1) the
court finds that:

(A) the evidence:

(i)
still exists and is in a condition making DNA testing possible; and

(ii)
has been subjected to a chain of custody sufficient to establish that it has
not been substituted, tampered with, replaced, or altered in any material
respect; and

(B) identity was or is an issue in the case; and

(2)
the convicted person establishes by a preponderance of the evidence that:

(A)
the person would not have been convicted if exculpatory results had been
obtained through DNA testing; and

(B)
the request for the proposed DNA testing is not made to unreasonably delay the
execution of sentence or administration of justice.

 








Tex. Code Crim. Proc.
Ann. art. 64.03(a) (Vernon Supp. 2005).[2]  Thus, article 64.03(a)(2)(A) requires that
the convicted individual establish that he or she would not have been convicted
if exculpatory results had been obtained through DNA testing.  Id. at 64.03(a)(2)(A).  The court of criminal appeals determined that
a movant does not satisfy his burden under article 64.03 if the record contains
other substantial evidence of guilt independent of that for which the movant seeks
DNA testing.  See Whitaker, 160
S.W.3d at 9; Skinner v. State, 122 S.W.3d 808, 813 (Tex. Crim. App.
2003); Rivera, 89 S.W.3d at 60.








Appellant argues that the
trial court applied an improper standard based on the State=s arguments at trial because the trial court adopted the State=s memorandum, findings of fact, and conclusions of law.  The State argued below in its reply to
Appellant=s request
for forensic DNA testing that, although DNA testing could be performed on the
evidence, DNA testing was not necessary because ADefendant has failed to prove, by a preponderance of the evidence,
that DNA testing would exonerate him.@  Appellant specifically
complains about a portion of the conclusions of law where the trial court
stated that ADefendant
has not proven by a preponderance of the evidence that he would not have been
convicted had the DNA testing been done on the items he requests.@  Viewed in isolation, it would
appear that the trial court applied an improper standard in denying Appellant=s request for post-conviction DNA testing because the isolated
statement does not include the assumption that the DNA evidence is exculpatory.  However, when the conclusions of law are
viewed in their entirety, it is clear the trial court applied the proper
standard.  The trial court=s conclusions of law state as follows:

1.  The trial court may order DNA testing if it
finds, among other things, that the convicted person establishes by a
preponderance of the evidence that he would not have been convicted if
exculpatory results had been obtained through DNA testing. Tex.  Crim. Proc. Code Ann. art. 64.03(a)(2)(A).

 

2.  Defendant is not entitled to DNA testing of
the ring because it is no longer in possession of the State and has not been
subjected to a sufficient chain of custody. 
See Tex. Crim. Proc. Code Ann. art. 64.03(a)(1)(A)(ii).

 

3.  Defendant has not proven by a preponderance
of the evidence that he would not have been convicted had the DNA testing been
done on the items he requests.

 

4.  Defendant is not entitled to
DNA testing. 

 

5.  The Court DENIES Defendant=s
motion for DNA testing.

 

The trial court=s conclusions of law track the statutory language.  Therefore, we conclude that the trial court
did not apply the improper standard to determine whether Appellant was entitled
to post-conviction DNA testing.








Without citing any legal
authority, Appellant also asserts that the trial court erred in considering
each individual piece of evidence, rather than the cumulative effect of all of
the biological evidence, in determining whether exculpatory evidence would
result in his exoneration.  We disagree
with Appellant.  A review of the findings
of fact reveal that the trial court analyzed the evidence in the same manner as
the court of criminal appeals has reviewed evidence to determine whether the
presence or lack of DNA would prove innocence. 
See Rivera, 89 S.W.3d at 60 (analyzing first whether the
absence of the complainant=s DNA under the appellant=s fingernails would indicate his innocence and secondly whether a
negative result on a rape kit would indicate the appellant=s innocence). 

Appellant asserts that he met
the actual legal requirements to be entitled to post-conviction DNA
testing.  We therefore conduct a de novo
review to determine whether the trial court properly denied Appellant=s request for post-conviction DNA testing.  Skinner, 122 S.W.3d at 813. 








Even assuming that DNA test
results performed on the items that Appellant requests to be tested might
create an exculpatory inference, such an inference does not necessarily
conclusively outweigh other evidence establishing Appellant=s guilt.  See Rivera, 89
S.W.2d at 60 (holding absence of DNA under the defendant=s fingernails and negative result from rape kit would not indicate
innocence of capital murder).  The
exculpatory DNA results must outweigh the evidence that could have proved or
did prove the convicted person=s guilt.  Id.  It is insufficient to argue that the presence
of a defendant=s DNA
indicates guilt and the absence of DNA indicates innocence.  Id.

In this case, Appellant has
failed to establish that he would not have been convicted if exculpatory
results had been obtained through the DNA testing he is seeking because there
is substantial evidence of Appellant=s guilt aside from any DNA evidence. 
See Skinner, 122 S.W.3d at 813. 
Any absence of evidence containing Appellant=s DNA would not indicate his innocence given the other evidence
connecting him to this crime.  See
Rivera, 89 S.W.2d at 60; Kelly, 792 S.W.2d at 580.  Mary Earlene Copeland testified that she met
Appellant, a white male, in December 1986. 
Kelly, 792 S.W.2d at 580.  They
dated for a couple of months and, during that time, had a sexual
relationship.  Id.  The sexual relationship ended in February
1987, when Appellant got married, though Appellant began to call Copeland again
in the summer of 1987.  Id.  Copeland=s mother, Melva Teems, was introduced to Appellant, lent him money to
buy gas and get his car radiator fixed, and bought a 1974 Ford Fairlane from
him.  Id.  At no time, however, was Appellant ever inside
Teems= 1968 blue and white Ford pickup truck.  Id.








Lynn Sims, a prostitute,
testified that at about 11:00 p.m., sometime during the first week of October,
she got a ride from Appellant in Fort Worth. 
Id.  Sims had known
Appellant for a while, and she knew he usually drove a yellow Ford.  Id. at 581.  She said that on that night, however, he was
driving a truck that Sims identified as State=s Exhibits Numbers 2 and 3, or Teems= truck.  Id.  Sims also stated that Appellant had money
with him, including $100 and $50 bills, which was unusual.  Id. 
She went on to say that during the ride, Appellant stopped, tied a rope
around his arm, and injected what appeared to be cocaine into his arm.  Id. 
Sims identified the rope as State=s Exhibit Number 24A, which was the rope found in the truck.  Id.  Sims stated that while in the truck, she lit
one of Appellant=s cigarettes
with a wooden match and smoked the cigarette all the way down to the
filter.  Id.

Another prostitute, Sharon
Marie Byrd, testified she was also used to seeing Appellant along Rosedale
Street in a yellow Ford, but on two occasions on the same day she saw him in a
blue and white truck.  Id.  The first time she saw him, about 4:00 or
5:00 a.m., he was alone in the truck, and she spoke to him for a few
minutes.  Id.  When she saw him again about four hours
later, he had three other people in the truck with him.  Id.  Byrd also identified the truck as Teems= truck.  Id. 








Yet another prostitute,
Brenda Joyce Reese, recalled seeing Appellant in Teems= truck a little after 10:00 p.m. 
Id.  After he honked, she
flagged him down and got in the truck.  Id.  Reese further stated that Appellant took
her with him and bought some heroin and cocaine for $20.  Id. 
She said they cooked the heroin, added the cocaine, and shot it into
their arms with a syringe.  Id.  As they drove around afterward, Appellant
showed Reese a watch, some rings, and necklaces he said he was going to
sell.  Id.  Reese identified one of the rings as State=s Exhibit Number 13, or Teems= ring.  Id.  Reese said Appellant told her he had gotten
the ring from an old lady and that the truck would be Ahot@ soon.  Id.

Vance White, owner of Texas
Tire on Hemphill Street, testified that on October 6, in the late morning,
Appellant sold a set of wedding rings to him for $450 in cash.  Id. 
White identified the rings as State=s Exhibit Number 13, or Teems= rings.  Id.  Peggy Coop, a longtime friend of Teems, also
identified the rings sold to White as those belonging to Teems.  Id. 
White further stated that on October 13, a man identifying himself as
the seller of the rings called him about the rings.  Id. 
The record indicates the call was a collect call from cell number 16E of
the Tarrant County Jail where Appellant had been incarcerated since October
10.  Id. at 581-82.








At about 2:00 p.m. on October
6, a police officer found Teems= truck behind Panther Hall on South Collard Street.  Id. at 582.  There was no key in the ignition, but it had
not been hot‑wired and was locked. 
Id.  After the truck was
towed, it was examined for fingerprints. 
Id.  One fingerprint, from
inside the passenger‑side vent window, was identified as Appellant=s.  Id.  Human blood was discovered on the driver's
side seatcover, the driver=s side floor mat, and the ceiling above the driver=s seat.  Id.  A rope was also found on the seat. Id.  After examination, the only blood present in
sufficient quantities to be tested was the blood on the floor mat, which was
inconsistent with Appellant=s blood.  Id.  Also in the truck was a small plastic
envelope containing cocaine residue, a cigarette butt with lipstick on it, and
wooden matchsticks.  Id.








On October 17, Fort Worth
Police Officer Scott Hood found Teems= body near a dry creek bed off a dirt road northwest of the junction
of I‑35 and North Loop 820, approximately two miles from Appellant=s last place of employment.  Id.  Dr. Charles H. Harvey, Deputy Medical
Examiner for Tarrant and Parker Counties, stated that the body was very
decomposed, consistent with a date of death of October 6, and was wearing
jeans, tennis shoes, and a blue T‑shirt, but no bra.  Id. 
Because of the advanced state of decomposition, it was impossible to
determine Teems= blood type
or whether she had been sexually assaulted. 
Id.  It was possible,
however, to determine that she had been strangled, probably with the piece of
material ripped off the bottom of her own T‑shirt, which was still tied
around her neck.  Id.

Copeland stated that on
October 21, the day Teems was buried, she found a bra hook in Teems= bedroom that matched the one missing from the bra found earlier on
the bed.  Id.  The same day, she noticed a yellow stain on
Teems= bedspread.  Id.  The bedspread had been purchased in May 1987,
after Copeland=s sexual
relationship with Appellant had ended.  Id.  The stain on the bedspread was identified as
semen from a type AO@ secretor with PGM type 1 + 1 ‑ , which subgroup includes about
10% of white males.  Id.  The record shows Appellant is a type AO@ secretor
with PGM type 1 + 1 ‑ .  Id.  Further testing of the semen at a DNA testing
laboratory showed that the semen could have come from Appellant.  Id. 
The statistical probability that the semen came from another white male
was 1 in 13.5 million.  Id.

Given the substantial
evidence in the record that supports Appellant=s guilt, we hold that Appellant has failed to meet his burden of
establishing by a preponderance of the evidence that he would not have been
convicted if exculpatory results had been obtained through DNA testing.  See Skinner, 122 S.W.3d at 813.  Therefore, we hold that the trial court did
not err in denying Appellant=s request for post-conviction DNA testing under Chapter 64.
Accordingly, we overrule Appellant=s sole point.








CONCLUSION

Having overruled Appellant=s sole point, we affirm the trial court=s judgment. 

PER CURIAM

 

PANEL
A:  HOLMAN, J.; CAYCE, C.J.; and
LIVINGSTON, J.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  February 16, 2006











[1]See Tex. R. App. P. 47.4.





[2]The
2003 amendment to article 64.03 applies to convicted persons who  submit a motion for post-conviction DNA
testing on or after September 1, 2003.  See
Act of April 25, 2003, 78th Leg., R.S., ch. 13, ' 3,
2003 Tex. Gen. Laws 16, 16.