KELLY v. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-255-CR

BARRY DEAN KELLY APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Barry Dean Kelly appeals the trial court’s denial of his request for post-conviction forensic DNA testing.  A jury convicted Appellant of murder in 1988 and assessed a sentence of confinement for life.  The trial court sentenced Appellant accordingly, and his conviction was affirmed on appeal.  
See Kelly v. State
, 792 S.W.2d 579, 588 (Tex. App.—Fort Worth 1990) 
aff’d
, 824 S.W.2d 568, 574 (Tex. Crim. App. 1992).  In a single point, Appellant complains that the trial court erred in denying his request for post-conviction DNA testing.  We affirm.

BACKGROUND

Following his conviction of murder in 1988, Appellant appealed to this court, challenging the admissibility and reliability of the DNA test results that linked him to the semen on the victim’s bedspread, asserting that the evidence was insufficient to support his conviction, and challenging the trial court’s denial of a request for mistrial based on juror misconduct.  
See Kelly
, 792 S.W.2d at 580.  This court determined that the DNA evidence was reliable and admissible and held that the evidence was sufficient to show that Appellant was the murderer.  
Id.
 at 585.  This court further noted that, even without the DNA evidence linking Appellant to the semen found on the victim’s bedspread, the remaining evidence was sufficient to support his conviction.  
Id.
 at 586.  This court also overruled Appellant’s point regarding juror misconduct.  
Id.
 at 588.  The court of criminal appeals then considered Appellant’s objection to the admissibility and reliability of the DNA evidence linking Appellant to the semen found on the victim’s bedspread and affirmed his conviction.  
Kelly
, 824 S.W.2d at 574.

On December 30, 2003, Appellant filed a motion for appointment of counsel to assist him in requesting post-conviction DNA testing, and the trial court complied.  Appellant requested that DNA testing be performed on the following items in evidence:  (1) a rope tourniquet found in the victim’s truck that was allegedly used by Appellant to inject drugs into his arm; (2) a ligature determined to be the murder weapon; (3) the victim’s clothing, including her panties, shirt, and blue jeans; (4) the victim’s fingernail clippings; (5) two cigarette butts found in the victim’s truck; (6) blood smears and splatters found in the victim’s truck; and (7) two hairs located in a blood spot found in the victim’s truck.  The trial court denied his request. 

DISCUSSION

Appellant contends that the trial court erred in denying his request for post-conviction DNA testing.  Specifically, he complains that the trial court entered incorrect conclusions of law based on mistaken beliefs and arguments of the State. 

In reviewing a trial court’s decision on a motion for DNA testing, we employ a bifurcated standard of review.  
Rivera v. State
, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002) (citing 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).  We defer to the trial court’s determination of issues of historical fact and issues that turn on credibility and demeanor, while we review de novo whether the trial court was required to grant a motion for DNA testing under Chapter 64 of the Texas Code of Criminal Procedure.  
Whitaker v. State
, 160 S.W.3d 5, 8 (Tex. Crim. App.), 
cert. denied, 
543 U.S. 864 (2004); 
Rivera
, 89 S.W.3d at 59.  Chapter 64 governs the requirements for a request for post-conviction forensic DNA testing.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 64.01-.05 (Vernon Supp. 2005). 

The Texas Code of Criminal Procedure provides that a trial court may order post-conviction DNA testing under the following circumstances: 

(1) the court finds that:

(A) the evidence:

(i) still exists and is in a condition making DNA testing possible; and

(ii) has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect; and

(B) identity was or is an issue in the case; and

(2) the convicted person establishes by a preponderance of the evidence that:

(A) the person would not have been convicted if exculpatory results had been obtained through DNA testing; and

(B) the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice.

Tex. Code Crim. Proc. Ann.
 art. 64.03(a) (Vernon Supp. 2005).
(footnote: 2)  Thus, article 64.03(a)(2)(A) requires that the convicted individual establish that he or she would not have been convicted if exculpatory results had been obtained through DNA testing.  
Id
. at 64.03(a)(2)(A).  The court of criminal appeals determined that a movant does not satisfy his burden under article 64.03 if the record contains other substantial evidence of guilt independent of that for which the movant seeks DNA testing.  
See Whitaker
, 160 S.W.3d at 9
;
 Skinner v. State
, 122 S.W.3d 808, 813 (Tex. Crim. App. 2003)
; 
Rivera
, 89 S.W.3d at 60.

Appellant argues that the trial court applied an improper standard based on the State’s arguments at trial because the trial court adopted the State’s memorandum, findings of fact, and conclusions of law.  The State argued below in its reply to Appellant’s request for forensic DNA testing that, although DNA testing could be performed on the evidence, DNA testing was not necessary because “Defendant has failed to prove, by a preponderance of the evidence, that DNA testing would exonerate him.”  Appellant specifically complains about a portion of the conclusions of law where the trial court stated that “Defendant has not proven by a preponderance of the evidence that he would not have been convicted had the DNA testing been done on the items he requests.”  Viewed in isolation, it would appear that the trial court applied an improper standard in denying Appellant’s request for post-conviction DNA testing because the isolated statement does not include the assumption that the DNA evidence is exculpatory.  However, when the conclusions of law are viewed in their entirety, it is clear the trial court applied the proper standard.  The trial court’s conclusions of law state as follows:

1.  The trial court may order DNA testing if it finds, among other things, that the convicted person establishes by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. Tex.  Crim. Proc. Code Ann. art. 64.03(a)(2)(A).

2.  Defendant is not entitled to DNA testing of the ring because it is no longer in possession of the State and has not been subjected to a sufficient chain of custody.  
See 
Tex. Crim. Proc. Code Ann. art. 64.03(a)(1)(A)(ii).

3.  Defendant has not proven by a preponderance of the evidence that he would not have been convicted had the DNA testing been done on the items he requests.

4.  Defendant is not entitled to DNA testing. 

5.  The Court DENIES Defendant’s motion for DNA testing.

The trial court’s conclusions of law track the statutory language.  Therefore, we conclude that the trial court did not apply the improper standard to determine whether Appellant was entitled to post-conviction DNA testing.

Without citing any legal authority, Appellant also asserts that the trial court erred in considering each individual piece of evidence, rather than the cumulative effect of all of the biological evidence, in determining whether exculpatory evidence would result in his exoneration.  We disagree with Appellant.  A review of the findings of fact reveal that the trial court analyzed the evidence in the same manner as the court of criminal appeals has reviewed evidence to determine whether the presence or lack of DNA would prove innocence.  
See
 
Rivera
, 89 S.W.3d at 60 (analyzing first whether the absence of the complainant’s DNA under the appellant’s fingernails would indicate his innocence and secondly whether a negative result on a rape kit would indicate the appellant’s innocence). 

Appellant asserts that he met the actual legal requirements to be entitled to post-conviction DNA testing.  We therefore conduct a de novo review to determine whether the trial court properly denied Appellant’s request for post-conviction DNA testing.  
Skinner
, 122 S.W.3d at 813. 

Even assuming that DNA test results performed on the items that Appellant requests to be tested might create an exculpatory inference, such an inference does not necessarily conclusively outweigh other evidence establishing Appellant’s guilt.  
See Rivera
, 89 S.W.2d at 60 (holding absence of DNA under the defendant’s fingernails and negative result from rape kit would not indicate innocence of capital murder).  The exculpatory DNA results must outweigh the evidence that could have proved or did prove the convicted person’s guilt.  
Id.
  It is insufficient to argue that the presence of a defendant’s DNA indicates guilt and the absence of DNA indicates innocence.  
Id.

In this case, Appellant has failed to establish that he would not have been convicted if exculpatory results had been obtained through the DNA testing he is seeking because there is substantial evidence of Appellant’s guilt aside from any DNA evidence.  
See Skinner
, 122 S.W.3d at 813.  Any absence of evidence containing Appellant’s DNA would not indicate his innocence given the other evidence connecting him to this crime. 
 See Rivera
, 89 S.W.2d at 60
; Kelly
, 792 S.W.2d at 580.  Mary Earlene Copeland testified that she met Appellant, a white male, in December 1986.
  Kelly
, 792 S.W.2d at 580. 
 
They dated for a couple of months and, during that time, had a sexual relationship.  
Id.  
The sexual relationship ended in February 1987, when Appellant got married, though Appellant began to call Copeland again in the summer of 1987.  
Id.
  Copeland’s mother, Melva Teems, was introduced to Appellant, lent him money to buy gas and get his car radiator fixed, and bought a 1974 Ford Fairlane from him.  
Id. 
 At no time, however, was Appellant ever inside Teems’ 1968 blue and white Ford pickup truck.  
Id.

Lynn Sims, a prostitute, testified that at about 11:00 p.m., sometime during the first week of October, she got a ride from Appellant in Fort Worth.  
Id.
  Sims had known Appellant for a while, and she knew he usually drove a yellow Ford.  
Id. 
at 581.  She said that on that night, however, he was driving a truck that Sims identified as State’s Exhibits Numbers 2 and 3, or Teems’ truck.  
Id.  
Sims also stated that Appellant had money with him, including $100 and $50 bills, which was unusual.  
Id.
  She went on to say that during the ride, Appellant stopped, tied a rope around his arm, and injected what appeared to be cocaine into his arm.  
Id.  
Sims identified the rope as State’s Exhibit Number 24A, which was the rope found in the truck.  
Id. 
 Sims stated that while in the truck, she lit one of Appellant’s cigarettes with a wooden match and smoked the cigarette all the way down to the filter.  
Id.

Another prostitute, Sharon Marie Byrd, testified she was also used to seeing Appellant along Rosedale Street in a yellow Ford, but on two occasions on the same day she saw him in a blue and white truck.  
Id.
  The first time she saw him, about 4:00 or 5:00 a.m., he was alone in the truck, and she spoke to him for a few minutes.  
Id.  
When she saw him again about four hours later, he had three other people in the truck with him.  
Id. 
 Byrd also identified the truck as Teems’ truck.  
Id. 

Yet another prostitute, Brenda Joyce Reese, recalled seeing Appellant in Teems’ truck a little after 10:00 p.m.  
Id.  
After he honked, she flagged him down and got in the truck.  
Id.  
Reese further stated that Appellant took her with him and bought some heroin and cocaine for $20.  
Id.
  She said they cooked the heroin, added the cocaine, and shot it into their arms with a syringe.  
Id.
  As they drove around afterward, Appellant showed Reese a watch, some rings, and necklaces he said he was going to sell.  
Id.
  Reese identified one of the rings as State’s Exhibit Number 13, or Teems’ ring.  
Id.
  Reese said Appellant told her he had gotten the ring from an old lady and that the truck would be “hot” soon.  
Id.

Vance White, owner of Texas Tire on Hemphill Street, testified that on October 6, in the late morning, Appellant sold a set of wedding rings to him for $450 in cash.  
Id.
  White identified the rings as State’s Exhibit Number 13, or Teems’ rings.  
Id.
  Peggy Coop, a longtime friend of Teems, also identified the rings sold to White as those belonging to Teems.  
Id.
  White further stated that on October 13, a man identifying himself as the seller of the rings called him about the rings.  
Id.
  The record indicates the call was a collect call from cell number 16E of the Tarrant County Jail where Appellant had been incarcerated since October 10.  
Id.
 at 581-82.

At about 2:00 p.m. on October 6, a police officer found Teems’ truck behind Panther Hall on South Collard Street.  
Id.
 at 582.  There was no key in the ignition, but it had not been hot-wired and was locked.  
Id.
  After the truck was towed, it was examined for fingerprints.  
Id.
  One fingerprint, from inside the passenger-side vent window, was identified as Appellant’s.  
Id.
  Human blood was discovered on the driver's side seatcover, the driver’s side floor mat, and the ceiling above the driver’s seat.  
Id.
  A rope was also found on the seat. 
Id.
  After examination, the only blood present in sufficient quantities to be tested was the blood on the floor mat, which was inconsistent with Appellant’s blood.  
Id.
  Also in the truck was a small plastic envelope containing cocaine residue, a cigarette butt with lipstick on it, and wooden matchsticks.  
Id.

On October 17, Fort Worth Police Officer Scott Hood found Teems’ body near a dry creek bed off a dirt road northwest of the junction of I-35 and North Loop 820, approximately two miles from Appellant’s last place of employment.  
Id.
  Dr. Charles H. Harvey, Deputy Medical Examiner for Tarrant and Parker Counties, stated that the body was very decomposed, consistent with a date of death of October 6, and was wearing jeans, tennis shoes, and a blue T-shirt, but no bra.  
Id.
  Because of the advanced state of decomposition, it was impossible to determine Teems’ blood type or whether she had been sexually assaulted.  
Id.
  It was possible, however, to determine that she had been strangled, probably with the piece of material ripped off the bottom of her own T-shirt, which was still tied around her neck.  
Id.

Copeland stated that on October 21, the day Teems was buried, she found a bra hook in Teems’ bedroom that matched the one missing from the bra found earlier on the bed.  
Id.
  The same day, she noticed a yellow stain on Teems’ bedspread.  
Id.
  The bedspread had been purchased in May 1987, after Copeland’s sexual relationship with Appellant had ended.  
Id.
  The stain on the bedspread was identified as semen from a type “O” secretor with PGM type 1 + 1 - , which subgroup includes about 10% of white males.  
Id.
  The record shows Appellant is a type “O” secretor with PGM type 1 + 1 - .  
Id.
  Further testing of the semen at a DNA testing laboratory showed that the semen could have come from Appellant.  
Id.
  The statistical probability that the semen came from another white male was 1 in 13.5 million.  
Id.

Given the substantial evidence in the record that supports Appellant’s guilt, we hold that Appellant has failed to meet his burden of establishing by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing.  
See Skinner
, 122 S.W.3d at 813.  Therefore, we hold that the trial court did not err in denying Appellant’s request for post-conviction DNA testing under Chapter 64. Accordingly, we overrule Appellant’s sole point.

CONCLUSION

Having overruled Appellant’s sole point, we affirm the trial court’s judgment. 

PER CURIAM

PANEL A:  HOLMAN, J.; CAYCE, C.J.; and LIVINGSTON, J.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  February 16, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
The 2003 amendment to article 64.03 applies to convicted persons who  submit a motion for post-conviction DNA testing on or after September 1, 2003.  
See
 Act of April 25, 2003, 78th Leg., R.S., ch. 13, § 3, 2003 Tex. Gen. Laws 16, 16.