In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00117-CR


______________________________




MICKEY DEAN GRIFFITH, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 6th Judicial District Court


 Lamar County, Texas


Trial Court No. 22358




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Mickey Dean Griffith attempts to appeal his conviction for arson, repeat offender. Griffith
entered into a plea agreement and was sentenced in accordance therewith to twenty years'
imprisonment, to run concurrently with a sentence imposed in a companion case on appeal, cause
number 06-08-00118-CR. 

 The record contains a certification from the trial court that this "is a plea-bargain case, and
the defendant has NO right of appeal." See Tex. R. App. P. 25.2.

 Unless a certification, showing that a defendant has the right of appeal, is in the record, we
must dismiss the appeal. See Tex. R. App. P. 25.2(d). Because the trial court's certification
affirmatively shows Griffith has no right of appeal, and because the record before us does not reflect
that the certification is incorrect, see Dears v. State, 154 S.W.3d 610, 615 (Tex. Crim. App. 2005),
we must dismiss the appeal.


 Accordingly, we dismiss the appeal for want of jurisdiction.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 15, 2008

Date Decided: July 16, 2008


Do Not Publish



0;          (i)       not available; or
\
\
                                (ii)      available, but not technologically capable of providing probative\
results; or
\
\
                                (B)      through no fault of the convicted person, for reasons that are of a\
nature such that the interests of justice require DNA testing; or
\
\
                                (2)      although previously subjected to DNA testing, can be subjected to\
testing with newer testing techniques that provide a reasonable likelihood of\
results that are more accurate and probative than the results of the previous\
test. \
'

var WPFootnote4 = '
The record does not reflect that the trial court required the State to deliver the\
evidence to the court or explain in writing why the State could not deliver the evidence. \
Harper, however, forfeited the right to complain of any error in this regard. The failure to\
comply with Article 64.02 is waived where an appellant does not ask the trial court to make\
such an inquiry of the state. Shannon v. State, 116 S.W.3d 52 (Tex. Crim. App. 2003); see\
Tex. R. App. P. 33.1(a). There is nothing in the record to indicate Harper requested the trial\
court to make such an inquiry. \
'

var WPFootnote5 = '
Tex. Code Crim. Proc. Ann. art. 64.03 (Vernon Supp. 2004) provides that a\
convicting court may order forensic DNA testing under this chapter only if:
\
\
                                (1)      the court finds that:
\
\
                                (A)      the evidence:
\
\
                                (i)       still exists and is in a condition making DNA testing possible; and
\
\
                                (ii)      has been subjected to a chain of custody sufficient to establish that\
it has not been substituted, tampered with, replaced, or altered in any\
material respect; and
\
 \
                                (B)      identity was or is an issue in the case; and
\
\
                                (2)      the convicted person establishes by a preponderance of the evidence\
that:
\
\
                                (A)      the person would not have been convicted if exculpatory results had\
been obtained through DNA testing; and
\
\
                                (B)      the request for the proposed DNA testing is not made to unreasonably\
delay the execution of sentence or administration of justice. \
'

var WPFootnote6 = '
Harper\'s motion was not accompanied by a sworn affidavit containing statements\
of fact as required by Tex. Code Crim. Proc. Ann. art. 64.01(a) (Vernon Supp. 2004), but\
he did, however, affirm the motion was true and correct under the penalty of perjury in\
compliance with Tex. Civ. Prac. & Rem. Code Ann. §§ 132.001–.003 (Vernon 1997). See\
In re Fain, 83 S.W.3d 885, 889 n.4 (Tex. App.—Austin 2002, no pet.). \
'

function WPShow( WPid, WPtext )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'visible'" );
 else
 {
 if( floatwnd == 0 || floatwnd.closed )
 floatwnd = window.open( "", "comment", "toolbars=0,width=600,height=200,resizable=1,scrollbars=1,dependent=1" );
 floatwnd.document.open( "text/html", "replace" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( "\r\n" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( WPtext );
 floatwnd.document.write( '
Close');
 floatwnd.document.write( "
" );
 floatwnd.document.close();
 floatwnd.focus();
 }
}

function WPHide( WPid )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'hidden'" );
}



















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00136-CR
______________________________


JEFFREY LYNN HARPER, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 336th Judicial District Court
Fannin County, Texas
Trial Court No. 19663


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Jeffrey Lynn Harper appeals the trial court's denial of his post-conviction motion for
forensic DNA testing. Harper was convicted by a jury of sexual assault of a child.


 The jury
found the enhancement allegation true, and the trial court sentenced him to life
imprisonment. We affirmed his conviction on direct appeal. Harper v. State, No.
06-00-00200-CR, 2002 Tex. App. LEXIS 476 (Tex. App.—Texarkana Jan. 24, 2002, pet.
ref'd). Harper filed a motion, pro se, pursuant to Chapter 64 of the Texas Code of Criminal
Procedure, for forensic DNA testing. He requested that vaginal swabs, taken from the
victim by the sexual assault nurse examiner, be tested. We affirm the trial court's denial
of Harper's motion. 
          The evidence at Harper's trial showed that, on the evening of July 30, 1999, C. H.,
a fifteen-year-old girl, and another fifteen-year-old girl, went with Harper and Edward
Workins to a rural area where they visited, rode four-wheelers, and consumed alcoholic
beverages. C. H. testified that, in the early morning hours of that evening, Harper and
Workins were taking the two girls home and, after dropping the other girl off at her home
and while on the way to take C. H. home, they stopped in a field and she was sexually
assaulted. She testified that one man penetrated her while the second man held her and
that the second man attempted to have intercourse, but failed. C. H. was not entirely sure
which individual, Harper or Workins, penetrated her, and she had trouble distinguishing the
two men during her testimony. Workins testified Harper had intercourse with C. H. He
testified he attempted to have intercourse with C. H., but was unable to sustain an erection. 
He also testified he did not restrain C. H. during the assault.


 Geri Larson, a registered
nurse at Texoma Medical Center and a certified sexual assault nurse examiner, testified
she examined C. H. a few hours after the assault. She testified there was extreme redness
and a superficial laceration around her genital area which was consistent with the history
C. H. had given her of having been sexually assaulted. Dr. Manuel Valdez, Jr., the
supervisor of the Texas Department of Public Safety (DPS) crime laboratory in Garland,
Texas, testified semen was detected on the panties C. H. wore on the night in question. 
He testified Workins was ruled out as a possible contributor of the semen, but Harper was
a genetic match. Valdez testified the probability a person other than Harper was the
contributor of the semen in C. H.'s panties was 1 in 533 billion for Caucasians, 1 in 41
trillion for Blacks, and 1 in 141 billion for Hispanics. The jury found Harper guilty, and the
court sentenced him to life imprisonment. 
          Article 64.01 of the Code of Criminal Procedure provides that a convicted person
may request forensic DNA testing of evidence containing biological material.


 The motion
must be accompanied by an affidavit, sworn to by the convicted person, containing
statements of fact in support of the motion. Tex. Code Crim. Proc. Ann. art. 64.01(a)
(Vernon Supp. 2004). The statute provides that, on receipt of the motion, the convicting
court shall require the attorney representing the state to deliver the evidence to the court,
along with a description of the condition of the evidence, or explain in writing to the court
why the state cannot deliver the evidence to the court. Tex. Code Crim. Proc. Ann. art.
64.02(2)(A), (B) (Vernon Supp. 2004).


 A convicting court may order forensic DNA testing
under Chapter 64 only if the court makes certain findings, including that the person would
not have been convicted if exculpatory results had been obtained through DNA testing. 
Tex. Code Crim. Proc. Ann. art. 64.03 (Vernon Supp. 2004).


 
          In his motion, Harper contended that, while DNA testing was performed and
admitted at trial on the victim's panties, no DNA testing was conducted on the vaginal
swabs obtained from the victim by the sexual assault nurse examiner. Harper contended
that other individuals were present during the assault and that DNA testing of the vaginal
swabs would unequivocally establish that such other persons were the actual perpetrators
of the offense.


 Harper attached to his motion copies of the Fannin County Sheriff's Office
investigative reports and a letter from John Donahue, a Criminalist IV with the DPS Crime
Laboratory. The sheriff's office investigative reports indicate that a DPS laboratory report
reflects the presence of semen on the panties from the victim as well as on the vaginal
swabs taken during the sexual assault medical examination of the victim. In its response
to the motion for DNA testing, the State contended Harper did not show a reasonable
probability he would not have been prosecuted or convicted if DNA testing had been
conducted on the vaginal swabs because the DNA testing conducted on the victim's
panties established that Harper unequivocally committed the offense.
          The trial court denied the motion without conducting a hearing, concluding that: (1)
sufficient DNA testing was conducted on the evidence before Harper's trial; (2) the results
of the DNA testing were presented at trial; and (3) no new testing techniques exist which
provide a reasonable likelihood of results that are more accurate and probative than the
results of the previous test. These findings appear to have been made pursuant to Article
64.01 and, while there is evidence to support the first two, there is no evidence to support
the court's third finding. Significantly, the court made no express findings pursuant to
Article 64.03. However, in light of the State's response to Harper's motion, we find the trial
court's denial of the motion an implied determination in accordance with Article
64.03(a)(2)(A) that Harper failed to establish he would not have been convicted if
exculpatory results had been obtained through DNA testing of the vaginal swabs. See
Cravin v. State, 95 S.W.3d 506, 508 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (after
state responded to appellant's motion for DNA testing that it could not deliver evidence for
testing because evidence did not exist, convicting court's denial of appellant's motion was
an implied determination evidence did not exist in accordance with Article 64.03).
          Article 64.03(a)(2)(A) requires the convicted individual to establish by a
preponderance of the evidence that a reasonable probability exists he or she would not
have been prosecuted or convicted if exculpatory results had been obtained through DNA
testing. The Texas Court of Criminal Appeals has interpreted that language as meaning
a reasonable probability exists that exculpatory DNA tests will prove a convicted
individual's innocence. Kutzner v. State, 75 S.W.3d 427, 438 (Tex. Crim. App. 2002). That
showing has not been made if exculpatory test results would "merely muddy the waters." 
Id. Credibility verifications, therefore, are not a permissible reason for DNA testing under
Chapter 64. See Tex. Code Crim. Proc. Ann. arts. 64.01–.05 (Vernon Supp. 2004). 
          In our review of the trial court's decision, we employ a bifurcated standard of review
and afford almost total deference to a trial court's determination of issues of historical fact
supported in the record, and application of law to fact issues that turn on credibility and
demeanor, while we review de novo other application of law to fact issues. Rivera v. State,
89 S.W.3d 55, 59 (Tex. Crim. App. 2002); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997). Although there may be subsidiary fact issues that are reviewed deferentially,
the ultimate question of whether a reasonable probability exists that exculpatory DNA tests
would prove innocence is an application of law to fact question that does not turn on
credibility and demeanor, and is therefore reviewed de novo. 
          Harper contends that, if exculpatory results had been obtained from the requested
DNA testing, a reasonable probability of his innocence would be raised because it would
show: (1) whether the complainant was actually assaulted; (2) if she was assaulted, the
identity of who assaulted her; and (3) the lack of credibility on the part of the plea-bargaining codefendant (Workins). He contends that, "[i]f the evidence showed that the
co-defendant, Mr. Workins, was the source of the semen then that co-defendant's
testimony would have been impeached," and "would show that the co-defendant, Workins,
was responsible for the sexual assault – not appellant." 
          In light of the substantial evidence of Harper's guilt, the presence of Workins' or a
third-party's DNA on the vaginal swabs would not constitute affirmative evidence of
Harper's innocence. C. H. identified both Harper and Workins as her assailants. Her
testimony never wavered as to Harper's presence on the night in question, or as to his
involvement in the sexual assault. Workins also testified Harper had intercourse with C. H.
and admitted he attempted to have intercourse with her. The findings by the sexual
assault nurse examiner were consistent with C. H. having been sexually assaulted. In
addition, the DNA testing conducted on C. H.'s panties conclusively establishes that Harper
was present and a perpetrator of the offense. Therefore, in light of this evidence of
Harper's guilt, the presence of Workins' DNA on the vaginal swabs would not prove
Harper's innocence, but would merely "muddy the waters." See Skinner v. State, 2003
Tex. Crim. App. LEXIS 927 (Tex. Crim. App. Dec. 10, 2003); Rivera, 89 S.W.3d at 60–61;
Thompson v. State, 95 S.W.3d 469, 472 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). 
At the most, this evidence could create an inference that Workins was the individual who
penetrated the sexual organ of C. H. while Harper was the individual who tried but was
unsuccessful. This inference, however, would not prove Harper's innocence because it
would not disprove his culpability as a party to the sexual assault. The jury charge included
the law of parties and provided that "[a] person is criminally responsible for an offense
committed by the conduct of another if, acting with intent to promote or assist the
commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the
other person to commit the offense." While C. H. was not entirely sure which individual
penetrated her, her testimony established that the other individual "held her legs" while she
was being sexually assaulted by whomever penetrated her. Under the jury instruction
given, the jury was authorized to find that the person who "held her legs" aided in the
commission of the sexual assault. Therefore, the testing of the vaginal swabs would not
prove Harper's innocence, even if exculpatory evidence was obtained. 
          For these reasons, we find the trial court did not err in denying Harper's motion for
post-conviction forensic DNA testing of the vaginal swabs. 
          We affirm the order. 


                                                                Donald R. Ross
                                                                Justice

Date Submitted:      December 8, 2003
Date Decided:         December 19, 2003

Do Not Publish