

# NUMBER 13-17-00482-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**KENNETH NIOUS,**                                                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                            **Appellee.**

### On appeal from the 28th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Justices Rodriguez, Contreras, and Benavides**
**Memorandum Opinion by Justice Rodriguez**

Appellant Kenneth Nious appeals from the trial court's order denying his motion for post-conviction DNA testing. By four issues, Nious complains of: (1) ineffective assistance of counsel; (2) the State's failure to disclose exculpatory DNA evidence; (3)

prosecutorial misconduct; and (4) the trial court's denial of his motion for DNA testing. We affirm the order denying the DNA motion.

## I.   BACKGROUND

Nious was indicted for continuous sexual abuse of a child.   *See* TEX. PENAL CODE ANN. § 21.02 (West, Westlaw through 2017 1st C.S.).   Authorities collected multiple DNA samples from the child for testing.   Two DNA reports appear in the record.   The November 4, 2008 serology/DNA report from the Texas Department of Public Safety crime laboratory concluded that only the child's DNA was detected in the samples.   The November 2008 report set out the following:

> The DNA profile from Item 1B1 ([the child complainant's] labial swabs) is consistent with the DNA profile of [the child complainant].   [She] cannot be excluded as the contributor of the stain.
>
> No interpretable DNA profile was obtained from Item 1C1 ([the child's] anal swabs).
>
> The partial DNA profile from the sperm cell fraction of the semen stain on Item 1D.Stain.A ([the child's] panties) is consistent with the DNA profile of [the child].   [She] cannot be excluded as the contributor of the stain.
>
> The DNA extracts; the remaining portions of Items 1A, 1B1, 1C1, and 1D Stain A, and Item 1D Stain B are being retained frozen in this laboratory.

The November 4, 2008 report identified Item 1A as the child's known blood sample.   It also set out that "[a] trace amount of apparent blood" and a "non-specific constituent of saliva" were detected on Item 1D; no apparent semen was detected.

Following an August 14, 2009 status hearing, a Y-Chromosome Short Tandem Repeat (Y-STR) DNA analysis was requested.   On October 22, 2009, a Bexar County Criminal Investigation Laboratory issued its report.   The findings from this report were

2

inconclusive. It set out that "[n]o serological testing was performed on the cutting from [Item D, the child's] panties" because "human male DNA of insufficient quantity and/or quality was present in the DNA extract from the cutting from the panties stain . . . to develop a genetic profile. Therefore, forensic Y-STR DNA comparisons were not possible with this item."

That same date, October 22, 2009, Nious pleaded guilty, pursuant to a plea agreement, to the lesser offenses of indecency with a child and aggravated sexual assault of a child. *See id.* §§ 21.11, 22.021 (West, Westlaw through 2017 1st C.S.). The trial court assessed punishment at twenty years in prison for the first offense and thirty years in prison for the second, with the sentences to run concurrently. Nious claims, and the State does not dispute, that he did not receive the October 22, 2009 results until after he pleaded guilty.

On February 4, 2013, Nious filed a post-conviction article 11.07 application for writ of habeas corpus, complaining that, among other things: counsel was ineffective; the State engaged in prosecutorial misconduct; and newly discovered DNA test results obtained after he pleaded guilty exonerated him by failing to identify him as the person who contributed trace amounts of blood, semen, and saliva found on samples from the child.[1] *See* TEX. CODE. CRIM. PROC. ANN. art. 11.07 (West, Westlaw through 2017 1st C.S.). In support of his application, Nious attached investigative reports, a letter from his

---

[1] The clerk's record shows that Nious filed a motion for DNA testing in 2012. In support of that motion, Nious filed an affidavit stating, among other things, that he was provided ineffective assistance of counsel, his plea was involuntary, and "in most instantences [sic] had no idea or recollection of events or incidents" due to the medications he was taking, and the State suppressed the DNA results because he was not allowed to see them. No ruling on this motion appears in the record.

attorney, and the laboratory findings from November 4, 2008 and October 22, 2009.

On March 1, 2013, the trial court recommended that habeas relief be denied. The court filed the following findings of fact and conclusions of law:

> (1) the Applicant's plea was voluntary; (2) his counsel performed an adequate investigation; (3) there is no proof that counsel performed deficiently; (4) there is no proof that the results of these proceedings would have been different but for counsel's conduct; (5) counsel rendered effective representation under *Strickland*; (6) the State did not fail to disclose favorable material evidence; (7) the State did not engage in prosecutorial misconduct; (8) none of the DNA evidence is newly discovered; (9) none of the DNA evidence is exculpatory; and (10) the Applicant has not shown any proof of actual innocence.

On March 24, 2017, Nious filed the present Chapter 64 motion for DNA testing, asking the trial court to order the testing of all legally preserved biological evidence for the presence of "foreign blood, saliva, or semen that does not match movant[']s." Nious asserted that he pleaded guilty out of fear that he would receive a harsher sentence if he did not accept a plea. Nious maintained his innocence and claimed that he would never have pleaded guilty but for counsel's ineffective assistance and "would have demanded collection, preservation and testing of all biological evidence to eliminate [him] from false allegation." Finally, Nious declared:

> under penalty of perjury that I am innocent of the crime for which I was convicted and as part of my effort to prove I am innocent I need to test any biological evidence that was preserved in order to eliminate me as the person charged with & convicted of this crime.

The State responded urging, among other things, that Nious failed to establish by a preponderance of the evidence that he would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing and, thus, Nious did not meet all Chapter 64 requirements to be entitled to court-ordered, post-conviction DNA testing.

4

*See id.* art. 64.03(a)(2)(A) (West, Westlaw through 2017 1st C.S.). The trial court agreed with the State and, on August 16, 2017, denied Nious's motion for DNA testing because, among other things, the motion lacked the requirements of article 64.03.[2] *See id.* art. 64.03. No findings of fact or conclusions of law from this DNA proceeding appear in the record. *See Cravin v. State*, 95 S.W.3d 506, 508 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (providing that implied factual findings support the denial of a Chapter 64 motion for post-conviction DNA testing when no explicit findings appear in the record). This appeal followed.

## II.    INEFFECTIVE ASSISTANCE OF COUNSEL, FAILURE OF THE PROSECUTOR TO DISCLOSE EXCULPATORY EVIDENCE, AND PROSECUTORIAL MISCONDUCT

By his first three issues, Nious complains of matters that concern the underlying trial, including ineffective assistance of counsel, failure of the prosecutor to disclose exculpatory evidence, and prosecutorial misconduct. However, Chapter 64 does not confer jurisdiction on an appellate court to consider "collateral attacks on the trial court's judgment or to review, under the guise of a DNA testing appeal, anything beyond the scope of those articles." *In re Garcia*, 363 S.W.3d 819, 821–22 (Tex. App.—Austin 2012, no pet.) (quoting *Reger v. State*, 222 S.W.3d 510, 513 (Tex. App.—Fort Worth 2007, pet. ref'd)); *see Weems v. State*, 550 S.W.3d 776, 781–82 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Lopez v. State*, 114 S.W.3d 711, 714 (Tex. App.—Corpus Christi 2003, no

---

[2] On January 23, 2018, the court reporter informed this Court that "[n]o hearing was had [on Nious's motion for DNA testing] and therefore no record was made." Moreover, article 64.03, which applies in this case, does not require a hearing for a trial court to determine if the applicant is entitled to DNA testing. *Rivera v. State*, 89 S.W.3d 55, 58–59 (Tex. Crim. App. 2002); *see* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A) (West, Westlaw through 2017 1st C.S.). In contrast, a trial court must hold a hearing under article 64.04 after a convicted person has obtained DNA testing under article 64.03. *Rivera*, 89 S.W.3d at 59.

pet.). Nious's issues related to counsel's assistance, non-disclosure of evidence, and prosecutorial conduct are collateral attacks that are beyond the scope of Chapter 64. *See In re Garcia*, 373 S.W.3d at 821–22; *see also*, *e.g.*, TEX. CODE CRIM. PROC. ANN. arts. 64.01–64.05 (West, Westlaw through 2017 1st C.S.). Because we do not have jurisdiction under Chapter 64 to consider issues that challenge the judgment of conviction, we do not reach Nious's first three issues.

### III.    DNA TESTING

By his fourth issue, Nious contends that he "has attempted to have the DNA tested in a post-conviction Chpt. 64 motion for testing, however, the State wants to deny the motion by incorrectly and unlawfully stating that defendant does not meet the requirements set forthin [sic] Chapter 64.01 and 64.03." *See* TEX. CODE CRIM. PROC. ANN. arts. 64.01 & 64.03. Nious argues that he met conditions necessary for DNA testing under Chapter 64.[3] We disagree.

### A.    Standard of Review

Generally, we review a trial court's decision on a DNA motion under a bifurcated standard, affording almost total deference to the trial court's determination of issues of historical fact and those of application of law to fact that turn on credibility and demeanor of witnesses and reviewing de novo other issues application-of-law-to-fact questions that do not turn on the credibility and demeanor of witnesses. *Weems*, 550 S.W.3d at 779

---

[3] Nious also complains that his DNA "has not been tested using newer techniques that results [sic] in more accurate and probative results than from previous tests." However, he provides no record or case support for his contention regarding new techniques. So, to the extent that Nious is contending that the trial court erred in denying his motion because there are newer DNA techniques, his briefing is inadequate. *See* TEX. R. APP. P. 38.1(i).

6

(citing *Whitaker v. State*, 160 S.W.3d 5, 8 (Tex. Crim. App. 2004); *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002)). But in this case, because the trial court did not conduct a hearing, we review the trial court's denial of DNA testing de novo. *See id.* (citing *Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005)).

**B.      Applicable Law**

> Chapter 64 of the Code of Criminal Procedure governs a convicted person's request for post-conviction forensic DNA testing and contains multiple threshold requirements that must be met before an applicant is entitled to such testing. *See, e.g.*, TEX. CODE CRIM. PROC. ANN. arts. 64.01–64.05. The convicted person bears the burden of satisfying all article 64.01 and 64.03 requirements. *Wilson v. State*, 185 S.W.3d 481, 484 (Tex. Crim. App. 2006) [(en banc)].

*Weems*, 550 S.W.3d at 779. "A convicting court may order forensic DNA testing only if the statutory preconditions of Chapter 64 are met." *Id.* at 780 (citing *Holberg v. State*, 425 S.W.3d 282, 284 (Tex. Crim. App. 2002)).

Article 64.03 contains the following relevant requirement that Nious must have established by a preponderance of the evidence: "the person would not have been convicted if exculpatory results had been obtained through DNA testing." TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A). The Texas Court of Criminal Appeals has interpreted this requirement to mean that "a reasonable probability exists that exculpatory DNA tests will prove a convicted individual's innocence." *Skinner v. State*, 122 S.W.3d 808, 811 (Tex. Crim. App. 2003). In other words, "[t]he standard required by this Court to grant testing under Chapter 64 is affirmative evidence of innocence." *Id.*; *see also Ex parte Gutierrez*, 337 S.W.3d 883, 900 (Tex. Crim. App. 2011) ("The bottom line in post-conviction DNA testing is this: Will this testing, if it shows that the biological material

7

does not belong to the defendant, establish, by a preponderance of the evidence, that he did not commit the crime as either a principal or a party?").  On the other hand, the required showing of "exculpatory results" is not made "if exculpatory test results would 'merely muddy the waters.'"  *LaRue v. State*, 518 S.W.3d 439, 446 (Tex. Crim. App. 2017) (quoting *Rivera*, 89 S.W.3d at 59).

## C.     Discussion

Nious claims that he satisfied the Chapter 64 requirements.[4]  He asserts, in relevant part, "with certainty that he would NOT have pleaded guilty and would have insisted on going to trial" had he known "that the DNA test results supported his ACTUAL INNOCENT claim because the second test results from 10/22/09 would have excluded [him] as the semen doner [sic] of the specimen found in the [child's] panties."  By this argument, Nious claims he satisfied the article 64.03 requirement that he "would not have been convicted if exculpatory results had been obtained through DNA testing."  TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A).

However, as proof that exculpatory results would be obtained through the requested DNA testing, Nious asserts that he would not have pleaded guilty and would have gone to trial if he had known the DNA results supported his innocence claim.  *See Weems*, 550 S.W.3d at 779.  We cannot conclude that this, without more, shows by a preponderance of the evidence that he "would not have been convicted if exculpatory

---

[4] Nious also argues that "the newly discovered DNA" that "came in a lab report dated 10/22/09" was presented to the court after he pleaded guilty on that same day.  But this argument was not made in his 2017 motion for DNA testing, and Nious offers no record citation to support this argument; therefore, we do not consider it.

results had been obtained through DNA testing." TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A). By this assertion, Nious did not establish that a reasonable probability existed that exculpatory DNA tests would prove his innocence. *See Skinner*, 122 S.W.3d at 811.

Moreover, the results of the October 22, 2009 DNA report did not support Nious's innocence and did not exclude Nious as a semen donor, as he contends. Instead, the report concluded only that no serological testing could be performed from the sample because "human male DNA of insufficient quantity and/or quality was present in the DNA extract from the cutting from the panties stain . . . to develop a genetic profile." In sum, the October 22 report was inconclusive as to the innocence of any party and did not support Nious's actual-innocence claim. So, we cannot conclude that post-conviction testing would give rise to a reasonable probability that Nious did not commit the crime. *See Ex parte Gutierrez*, 337 S.W.3d at 900. Also, because no explicit findings of fact and conclusions of law appear in the record, any implied factual findings would support the denial of his motion. *See Cravin*, 95 S.W.3d at 508.

Based on the argument before us and our de novo review of the record, *see Weems*, 550 S.W.3d at 779, we conclude that any exculpatory test results would likely only muddy the waters. *See LaRue*, 518 S.W.3d at 446. Nious failed to satisfy all threshold requirements of Chapter 64, and the trial court properly denied his motion for DNA testing on this basis. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A); *Weems*, 550 S.W.3d at 779. We overrule Nious's fourth issue.

9

## IV. CONCLUSION

We affirm the trial court's order denying Nious's motion for post-conviction DNA testing.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 27th
day of December, 2018.